## INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 49, v. CITY OF MINNEAPOLIS AND OTHERS.

233 N. W. 2d 748.

September 19, 1975—No. 45220.

---

*Walter J. Duffy, Jr.,* City Attorney, and *Robert J. Alfton,* Assistant City Attorney, for appellants.

*Robins, Davis & Lyons, Stephen D. Gordon,* and *Ernest I. Reveal III,* for respondent.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

MACLAUGHLIN, JUSTICE.

Respondent, International Union of Operating Engineers, Local No. 49, is the exclusive representative of employees who were applicants for promotion within the Department of Public Works of appellant city of Minneapolis. Appellant city of Minneapolis, individually, and as a representative of its agencies, the Civil Service Commission and the Department of Public Works, is a public employer within the meaning of Minn. St. 179.63, subd. 4. Appellant Albert J. Hofstede is the mayor of Minneapolis, appellant Gerald Singer is the chairman of the Civil Service Commission, and appellant Clayton A. Sorenson is the director of the Department of Public Works. For the purpose of this opinion, we shall refer to the union as respondent and all of the appellants collectively as appellant.

This dispute arises out of the administration of a civil service examination for the position of foreman of equipment repair for the Department of Public Works of the city of Minneapolis. Applicants for the position were judged on the basis of oral and written examinations and on the basis of an efficiency rating and a seniority rating. After the results of the examination were released, several complaints were received regarding the content of the written examination. On July 2, 1973, respondent, upon

appeal to the Minneapolis Civil Service Commission, raised several questions concerning the examination, including allegations that some of the designated answers to the examination questions were incorrect and that many of the employees who took the examination had been rated by supervisors under whom they had either not worked or had not worked for a substantial period.

Respondent appeared at an October 11, 1973, meeting of the Civil Service Commission, at which it requested copies of all questions and answers to the examination and a list of the supervisors who had rated the applicants, together with information detailing when and for how long each applicant had worked for the supervisor making the rating. At a meeting on October 23, 1973, the Civil Service Commission admitted that they had credited incorrect answers for some questions and that there was more than one correct answer for other questions. At that meeting it was agreed that respondent would be supplied with copies of 11 examination questions protested by individual employees who had taken the examination, together with the correct answers. The city also identified the supervisors who rated the employees.

On November 8, 1973, the Civil Service Commission refused to supply respondent with (1) the remaining examination questions and the answers to those questions; and (2) information as to when and for how long each employee had worked for the supervisor who had rated his performance.[1] Respondent sought a writ of mandamus requiring appellant to supply the requested information. The district court issued an order granting respondent's request, and appellant has appealed to this court. We affirm.

---

[1] Respondent had also requested that appellant disclose the contents of a letter written to the Civil Service Commission by one of the applicants who took the examination. Respondent dropped the request after the oral argument of this case.

Two issues are presented on this appeal: (1) Does appellant have a duty under the Public Employment Labor Relations Act, Minn. St. 179.61 to 179.76 (PELRA), to disclose to respondent certain specific information relating to the process used to select employees for promotion; and (2) is mandamus a proper remedy in this case?

■ Under the PELRA, a public employer has a duty to meet and negotiate with the exclusive representative of its public employees concerning terms and conditions of employment (§ 179.66, subd. 2) which include (1) hours of employment, (2) compensation therefor, and (3) the employer's personnel policies affecting the working conditions of employees (§ 179.63, subd. 18). A public employer, however, is not required to meet and negotiate on matters of inherent managerial policy which include, but are not limited to, such areas of discretion or policy as the functions and programs of the employer, its overall budget, utilization of technology, the organizational structure, and selection, direction, and number of personnel (§ 179.66, subd. 1). "Meet and negotiate" is defined as the "performance of the mutual obligations of public employers and the exclusive representatives of public employees to meet * * * with the good faith intent of entering into an agreement with respect to terms and conditions of employment * * *." § 179.63, subd. 16. The refusal by an employer to meet and negotiate in good faith is an unfair labor practice. § 179.68, subd. 1. It is respondent's position that the obligation to meet and negotiate includes the obligation to divulge the information that respondent seeks in this proceeding.

In interpreting provisions of the PELRA, it is often instructive to refer to decisions interpreting the National Labor Relations Act (NLRA), 29 USCA, §§ 151 to 168. International Brotherhood of Teamsters, Local 320 v. City of Minneapolis, 302 Minn. 410, 225 N. W. 2d 254 (1975). Under the NLRA, the duty to bargain collectively is defined as "the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith

with respect to wages, hours, and other terms and conditions of employment." 29 USCA, § 158(d). The obligation to meet and confer in good faith includes the obligation to honor a good-faith request by a union to furnish the union with the information necessary to the union's intelligent functioning as a collective bargaining agent. If the employer refuses to supply requested information and that refusal materially hampers the union, the employer is guilty of an unfair labor practice. See, e.g., N.L.R.B. v. Acme Industrial Co. 385 U. S. 432, 87 S. Ct. 565, 17 L. ed. 2d 495 (1967); N.L.R.B. v. Truitt Mfg. Co. 351 U. S. 149, 76 S. Ct. 753, 100 L. ed. 1027 (1956). The scope of the duty extends to information peculiarly accessible to the employer and peculiarly inaccessible to the union. N.L.R.B. v. Item Co. 220 F. 2d 956 (5 Cir.), certiorari denied, 350 U.S. 836, 76 S. Ct. 73, 100 L. ed. 746 (1955). And this duty extends beyond the negotiation stages and applies to grievances and labor management relations during the term of the agreement. N.L.R.B. v. C & C Plywood Corp. 385 U. S. 421, 87 S. Ct. 559, 17 L. ed. 2d 486 (1967); Annotation, 2 A. L. R. 3d 880, 897. Promotions are considered mandatory subjects of bargaining under the NLRA, and thus information regarding promotions must be furnished to unions under the NLRA. See, e.g., U. S. Gypsum Co. 94 N.L.R.B. 112, 28 L.R.R.M. 1015 (1951). The same rationale has been applied to collective bargaining regarding aptitude testing in NLRA cases. See, e.g., American Gilsonite Co. 122 N.L.R.B. 1006, 43 L.R.R.M. 1242 (1959).

We are, of course, not bound by these decisions. The NLRA governs private sector employment while the PELRA governs public sector employment. The legislature in enacting the PELRA recognized that "[t]he relationships between the public, the public employees, and their employer governing bodies imply degrees of responsibility to the people served, need of cooperation and employment protection which are different from employment in the private sector." § 179.61. The legislature therefore declared that "unique approaches to negotiations and resolutions

of disputes between public employees and employers are necessary." § 179.61. Hence, we are compelled to fashion rules which recognize the special problems which exist in the public sector.

In enacting the PELRA, the legislature declared that "[i]t is the public policy of this state and the purpose of [the PELRA] to promote orderly and constructive relationships between all public employers and their employees * * *." § 179.61. This policy can only be fulfilled if the duty to meet and negotiate is meaningful. We therefore conclude that it was the intent of the legislature that the duty to meet and negotiate in good faith includes the obligation to provide that information which is necessary to intelligent functioning in the bargaining process. But this right is not unqualified. The legislature has directed that the purpose of promoting orderly and constructive relationships between all public employers and their employees is "subject * * * to the paramount right of the citizens of this state to keep inviolate the guarantees for their health, education, safety and welfare." § 179.61.

With these principles in mind, we now turn to the question of whether or not the particular information requested by respondent must be divulged by appellant. Respondent's first request is for the questions and the answer key to the civil service examination. Respondent is challenging the validity of this examination; and for that purpose a review of the entire examination, including the questions and answer key, is essential if respondent is to effectively and intelligently represent the interests of the involved employees. On the other hand, civil service examinations are intended to be used more than once so that the cost of administering the civil service system can be kept at a minimum. Appellant argues that if respondent is allowed access to the questions and answer key the examination can then only be used effectively once, causing an increase in cost to the Civil Service Commission. While this is a legitimate concern, we feel that the public interest in protecting the confidentiality of civil

service examinations can be adequately served if respondent is directed to refrain from disclosing the requested information to applicants who will take this examination in the future. Upon oral argument, respondent agreed that it would comply with such a direction. Therefore, we affirm the trial court's decision ordering appellant to divulge the questions and answer key, but direct that respondent respect the need for the confidentiality of this information.

Respondent's second request is for information indicating when and for how long each employee had worked for the supervisor who had rated his performance. This information is clearly relevant to the dispute in so far as it challenges the validity of the efficiency rating given to each applicant; and without the information it will be difficult, if not impossible, for respondent to intelligently challenge individual efficiency ratings. We are aware of no public interest to be served by keeping this information confidential, and we therefore hold that the trial court acted correctly in ordering appellant to divulge this information.

■ Appellant argues that any provision of a contract required by the PELRA which conflicts with the rules of the Civil Service Commission must be made consistent with those rules. Appellant claims that since it has already distributed to respondent all the information that is required to be distributed under the rules, it cannot be required to turn over any more information. Appellant bases this argument on our decision in International Brotherhood of Teamsters, Local No. 320 v. City of Minneapolis, 302 Minn. 410, 225 N. W. 2d 254 (1975). In that case, we were called on to interpret § 179.66, subd. 5, of the PELRA.[2] We held

[2] Minn. St. 179.66, subd. 5, reads as follows: "Any provision of any contract required by section 179.70, which of itself or in its implementation would be in violation of or in conflict with any statute of the state of Minnesota or rule or regulation promulgated thereunder or provision of a municipal home rule charter or ordinance or resolution adopted pursuant thereto, or rule of any state board or agency governing licensure or registration of an employee, provided such rule, regula-

that while the language of that section is unclear it indicated the intent of the legislature that a provision of a contract entered pursuant to the PELRA, which of itself or in its implementation violates or is in conflict with the public employer's home rule charter, is void and of no effect. Section 179.66, subd. 5, also refers to rules and regulations adopted pursuant to statute and to ordinances or resolutions adopted pursuant to a home rule charter.

Appellant argues that rules of the Minneapolis Civil Service Commission are enacted pursuant to authority vested in the Civil Service Commission by the charter of the city of Minneapolis, and that these rules have the force and effect of statutory law and, therefore, have priority over the provisions of the PELRA. If we accept this argument, any contract provision contrary to a civil service rule would be void and of no effect. We cannot agree that the legislature intended such a result, and we therefore reject appellant's arguments. The rules of the Civil Service Commission are not statutes and, at least for the purpose of our interpretation of the meaning of the terms as used in § 179.66, subd. 5, are not rules or regulations promulgated pursuant to statute, or ordinances or resolutions adopted pursuant to a home rule charter. As a result, the issue of whether or not appellant is required to turn over the questions and answer key is unaffected by § 179.66, subd. 5.

■ Appellant also argues that all matters relating to selection of personnel for promotion are exempt from the scope of the PELRA, basing the argument on § 179.66, subd. 1, which ex-

_____

tion, home rule charter, ordinance, or resolution is not in conflict with sections 179.61 to 179.66 and shall be returned to the arbitrator for an amendment to make the provision consistent with the statute, rule, regulation, charter, ordinance or resolution." We observed in the teamsters' case that the statute "is unclear and difficult to understand" and that "some words may have been inadvertently omitted." International Brotherhood of Teamsters, Local No. 320, v. City of Minneapolis, 302 Minn. 410, 417, 225 N. W. 2d 254, 258 (1975).

cepts from mandatory negotiation "matters of inherent managerial policy." This argument does not apply to the issue in this case, however. Appellant is correct in stating that the decision to administer competitive examinations is not subject to negotiation. However, this dispute does not concern the question of the propriety of using competitive examinations. Rather it relates to the fairness of a specific given examination, and as such it is a dispute involving terms and conditions of employment and subject to negotiation under the PELRA and not a matter of inherent managerial policy. Therefore, the duty to supply information clearly applies.

■ Appellant contends that the Minneapolis Civil Service Commission is not a public employer within the meaning of the PELRA. We disagree. Section 179.63, subd. 4, in so far as it is relevant, defines a public employer as the State of Minnesota and its political subdivisions and any agency or instrumentality of either. The appellant Civil Service Board is clearly an agency or instrumentality of appellant city. The commission, composed of residents of the city appointed by the mayor and approved by the city council, performs the following functions for the city: classifying employees, ensuring appointment on the basis of merit, and protecting employees from arbitrary and capricious treatment.

■ On the day the civil service examination in question was administered, respondent had not been certified by formal recognition as the exclusive representative of the employees. Appellant argues that the duty to supply information runs only to the exclusive representative; that respondent had not been formally recognized as the exclusive representative for purposes of this proceeding; and that, as a result, there is no duty to supply information. This argument has been raised for the first time on appeal; as a result, we are not required to decide this question. We do note, however, that under § 179.67 formal recognition is not the only method whereby an employee organization may be certified. An employee organization may also be certified by hav-

ing been voluntarily recognized as the exclusive representative by the public employer on the effective date of the act. § 179.67, subd. 1. The record discloses that respondent had been voluntarily recognized by appellant on the effective date of the act, and that shortly after this controversy began respondent was formally recognized by appellant.

■ Finally, we must determine whether or not mandamus is a proper remedy in this action. Minn. St. 586.01 provides:

"The writ of mandamus may be issued to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. It may require an inferior tribunal to exercise its judgment or proceed to the discharge of any of its functions, but it cannot control judicial discretion."

Mandamus will lie to compel a governmental body or board to perform a duty which the law clearly and positively requires. State ex rel. Spurck v. Civil Service Board, 226 Minn. 253, 32 N. W. 2d 583 (1948). However, mandamus will lie only where there is no other plain, speedy, and adequate remedy available. Zion E. L. Church v. City of Detroit Lakes, 221 Minn. 55, 21 N. W. 2d 203 (1945).

Since we have held that appellant has a duty under the PELRA to supply respondent with the information it has requested, we conclude that mandamus does lie unless, as appellant argues, there is another plain, speedy, and adequate remedy available. Appellant contends that respondent should await the final decision of the Civil Service Commission and then seek review of that decision by a writ of certiorari. Certiorari, however, is not an adequate remedy in this case. Respondent is not at this time seeking to review the final decision of the Civil Service Commission. Rather, it is seeking to obtain information which will aid it in making an effective challenge to the civil service examination. If respondent is to make good use of the information it is seeking, it must have that information before making the challenge. If

the information comes only after the Civil Service Commission's final decision on the challenge, as a result of a review by writ of certiorari, it will be too late to be effective. We therefore hold that mandamus is a proper remedy in this action.

Appellant has raised several other issues which we have considered and found to be without merit.

Affirmed.