MINNEAPOLIS FEDERATION OF
TEACHERS, LOCAL 59, Appellant,

v.

MINNEAPOLIS SPECIAL SCHOOL
DISTRICT NO. 1, Respondent.

No. 46973.

Supreme Court of Minnesota.

Oct. 7, 1977.

Peterson, Engberg & Peterson, Roger A. Peterson and William F. Garber, Minneapolis, for appellant.

Lindquist & Vennum, Norman L. Newhall and Nadine Strossen, Minneapolis, for respondent.

Peterson, Popovich, Knutson & Flynn, Peter S. Popovich, Robert A. Hughes and Richard J. Sands, St. Paul, for amicus curiae seeking affirmance.

Heard before PETERSON, MacLAUGHLIN, and YETKA, JJ., and reheard and decided by the court en banc.

YETKA, Justice.

Plaintiff, Minneapolis Federation of Teachers, Local 59, brought an action against the Minneapolis Special School District No. 1 seeking a declaratory judgment that the Public Employment Labor Relations Act of 1971 (PELRA), Minn.St. 179.61, et seq., requires the school district's teacher-transfer procedure to be subject to mandatory negotiations. The district court entered judgment favorable to defendant, and plaintiff appeals from that judgment and an order denying a new trial. We reverse and remand to the trial court.

This case presents the following issue:

Is the school district's system governing transfer of teachers required to be negotiated with the teachers' bargaining representative pursuant to PELRA?

Plaintiff is the exclusive bargaining representative under PELRA of approximately 3,500 teachers employed by defendant. Since the adoption of PELRA the parties have been unable to agree whether defendant's transfer methods are subject to the mandatory negotiation requirements of the act or are instead a "meet-and-confer" subject. The parties had, however, agreed on a policy which placed major emphasis on seniority and granted exceptions in certain cases.[1] In the spring of 1975, defendant decided to reduce its teaching staff by about 100 positions. Under the policy then in effect, 148 teachers having the lowest seniority were placed in a reassignment pool. Defendant granted exceptions to 31 teachers who would have been placed in the pool had it been based on seniority alone. The trial court found that the exceptions were in accordance with the policy then in force. Plaintiff was apparently dissatisfied with the large number of exceptions from the usual rule of transfer being granted. It therefore brought the instant action for a declaration of its bargaining rights. The trial court found that in formulating a transfer policy, it is desirable to consider factors other than seniority, such as a teacher's special training, involvement in the particular community which he serves, extracurricular responsibilities, role as part of a team, race, and sex. It therefore concluded that transfer of teachers is a matter of "inherent managerial policy" and not subject to the mandatory negotiation requirements of PELRA.

In 1971 the Minnesota legislature enacted PELRA. The act is similar in scope and purpose to the National Labor Relations Act (NLRA), 29 U.S.C.A., §§ 151 to 168, governing labor relations in the private sector. There are, however, important differences recognizing the special nature of public employment. Strikes, for example, are allowed only under limited circumstances. Minn.St. 179.64. The act imposes

1. This policy was not a part of the collective bargaining contract between the parties, but was included in a section containing policies about which the parties had met and conferred. This treatment was consistent with defendant's position that transfer is not a mandatory subject of bargaining. Plaintiff apparently did not insist on its position because it was satisfied with the substantive terms of the policy adopted.

a duty upon public employers to bargain in good faith regarding terms and conditions of employment. Minn.St. 179.63, subd. 18, provides:

"The term 'terms and conditions of employment' means the hours of employment, the compensation therefor including fringe benefits except retirement contributions or benefits, and the employer's personnel policies affecting the working conditions of the employees. In the case of professional employees the term does not mean educational policies of a school district. The terms in both cases are subject to the provisions of section 179.66 regarding the rights of public employers and the scope of negotiations."

Minn.St. 179.66 provides in part:

"Subdivision 1. A public employer is not required to meet and negotiate on matters of inherent managerial policy, which include, but are not limited to, such areas of discretion or policy as the functions and programs of the employer, its overall budget, utilization of technology, the organizational structure and selection and direction and number of personnel.

"Subd. 2. A public employer has an obligation to meet and negotiate in good faith * * * regarding grievance procedures and the terms and conditions of employment * * *.

"Subd. 3. A public employer has the obligation to meet and confer with professional employees to discuss policies and those matters relating to their employment not included under section 179.63, subdivision 18, pursuant to section 179.-73." [2]

■■■ Plaintiff contends that something cannot be both a "term and condition of employment" and a matter of "inherent managerial policy." It places primary reliance on § 179.66, subd. 3, which requires a public employer to meet and confer with professional employees on matters not included within § 179.63, subd. 18. By its

terms, § 179.66, subd. 3, would not apply to matters which are both "terms and conditions of employment" and "inherent managerial policy." Furthermore, § 179.66, subd. 1, clearly provides that "inherent managerial policy" matters are nonnegotiable, while § 179.66, subd. 2, just as unmistakably provides that "terms and conditions of employment" are negotiable. By so providing, the legislature apparently meant there to be no overlap in the scope of these terms. However, the trial court never held that transfer policy was a "term and condition of employment"; rather, it held that transfer procedures are "personnel policies affecting the working conditions of the employees." This phrase is included in the definition of "terms and conditions of employment," but the last sentence of § 179.63, subd. 18, provides that it is subject to § 179.66. The trial court reasoned that since transfer was a matter of "inherent managerial policy" under § 179.66, subd. 1, it did not come within the definition of "terms and conditions of employment" even though it was a personnel policy affecting working conditions.

Since this case involves statutory interpretation, we are not bound by the trial court's findings and conclusions. Transfer policy is not specifically mentioned in § 179.66, subd. 1, but that subdivision does include "functions and programs of the employer," "organizational structure," and "selection and direction and number of personnel." The question therefore is whether transfers are included in the phrase "selection and direction and number of personnel."

This court has on two previous occasions considered whether a specific matter must be negotiated under PELRA. In *International Union of Operating Eng. v. City of Mpls.*, 305 Minn. 364, 233 N.W.2d 748 (1975), this court held that the city must disclose the answer key to a civil service examination where a number of examinees chal-

---

**2.** The "meet-and-confer" procedure, outlined in Minn.St. 179.73, is designed "to encourage close cooperation between public employers and professional employees by providing for discussions and the mutual exchange of ideas * * *." It does not impose any duty to bargain in good faith.

lenged the validity of the exam. The court stated that a dispute over the fairness of a particular civil service examination is a term and condition of employment although the decision to administer a civil service examination was a matter of managerial discretion. In *International Bro. of Teamsters v. City of Minneapolis,* 302 Minn. 410, 225 N.W.2d 254 (1975), this court held that employee suspensions are not matters of inherent managerial policy. An analogy may be drawn between *International Union of Operating Eng. v. City of Mpls. supra,* and the present case.

■ Minn.St. 179.66 outlines in very broad terms what managerial policy shall be. Thus, under the phrase "selection and direction and number of personnel," the question is what scope is to be given the word "direction." If the entire section is read, however, it seems clear the legislature intends the board shall have direction over the broad educational objectives of the entire district. There is no doubt the decision to transfer a number of teachers is a managerial decision. The criteria for determining which teachers are to be transferred, however, involves a decision which directly affects a teacher's welfare and enters into a field which we hold is in fact negotiable.

■ The district appears willing to meet and confer on the transfer implementation, but denies that it must negotiate the issue. The problem which could arise is apparent—one school board might seriously consider the views held by the teachers and their organization, while another might meet and confer pro forma. If all districts must negotiate, input from the teachers' organizations is assured. Both administrators and school boards, on the one hand, and teachers, on the other, must be deemed to have the interests of the students and the school district at heart. Both are competent to recommend changes in policy. We believe the legislature intended that the public would benefit from the contributions of both groups by the passage of this act and that the transfers of individual teachers were intended to be a negotiable item. As we said in *International Bro. of Team-*

*sters v. City of Minneapolis,* 302 Minn. 410, 414, 225 N.W.2d 254, 257 (1975):

" * * * The phrase 'terms and conditions of employment' appears to have been borrowed from the National Labor Relations Act (NLRA), 29 USCA §§ 151 to 168. 29 USCA § 158(a)(5), makes it an unfair labor practice for the employer to refuse to bargain collectively, and § 158(d) defines the duty to bargain collectively as 'the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment * * *.'

\* \* \* \* \* \*

"A major purpose of PELRA is to further the resolution of labor disputes through negotiation. Because of the severe restrictions on strikes contained in the act, we believe that the legislature intended the scope of the mandatory bargaining area to be broadly construed so that the purpose of resolving labor disputes through negotiation could best be served. In our judgment, disciplinary matters of the type involved in this case were intended by the legislature to be a subject of mandatory negotiation under PELRA, and we so hold. Surely, whether an employee may be suspended for a period up to 30 days without pay and without an opportunity to be heard, and whether a written reprimand may be inserted into his record with no opportunity to contest it contents, are matters which affect 'the working conditions of the employees,' and thus are within the definition of the phrase 'terms and conditions of employment' found in § 179.63, subd. 18. A suspension from employment without pay speaks for itself as a serious interruption of an employee's working conditions, while a written reprimand in an employee's record may have serious repercussions on his future progress as a public employee, which certainly must be considered to affect the conditions of his employment."

We therefore hold as follows:

1. The decision to transfer a number of teachers is a managerial decision and not a subject for negotiation.

2. The adoption of the criteria by which individual teachers may be identified for transfer is a proper subject for negotiation and, as such, is properly included in the collective bargaining contract.

3. To insure that individual teacher transfers conform to the negotiated contract, each individual transfer is a proper subject of grievance arbitration.

Reversed and remanded.

SHERAN, C. J., took no part in the consideration or decision of this case.

WAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

On reargument, the court withdraws its opinion of April 22, 1977, and issues this opinion in lieu thereof.