MINNESOTA ARROWHEAD DISTRICT COUNCIL 96 OF AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, Appellant,

v.

ST. LOUIS COUNTY, et al., Respondents.

No. 48495.

Supreme Court of Minnesota.

Jan. 25, 1980.

Halverson, Watters, Bye & Downs, Don Bye, and James D. Robinson, Jr., Duluth, for appellant.

Keith M. Brownell, County Atty., Leo M. McDonnell and Wayne E. Gilbert, Asst. County Attys., Duluth, for respondents.

Heard before KELLY, WAHL, and KENNEDY, JJ., and considered and decided by the court en banc.

## OPINION

KELLY, Justice.

County employees union filed suit against the county and the county Civil Service Commission to enjoin actions that the union contended were not in accord with the county's labor contract with the union. The district court concluded that the contract was in violation of the county civil service statute and found for the defendants. We affirm in part and reverse in part.

In 1941, a session law (not later coded) was enacted to provide a civil service system for counties of greater than 150,000 population and greater than 5,000 square miles in size. L. 1941, c. 423, as amended (hereinafter St. Louis County Civil Service Law). St. Louis County was the only county to meet these criteria. Pursuant to the legislation, the County put the system into effect. The system provided for classification of employees and the establishment of a graded pay system. The director of the Civil Service system was required to prepare a schedule of pay rates. After public hearings and approval by the Civil Service Commission, the schedule was to be submitted to the County Board which could approve or reject the schedule. The Board could also make changes in the entire pay schedule or on particular levels, so long as no pay grade was raised above the next higher grade or lowered below the next lower level. Once the basic system was established, new classifications could be added by the same procedure. L. 1941, c. 423, §§ 5(f), 10.

In 1971, the Minnesota Legislature enacted the Public Employees Labor Relations Act (PELRA, Minn.Stat. § 179.61–179.76) which allowed public employees to organize and negotiate with public employers.

In 1971, The Minnesota Arrowhead District Council 96 of American Federation of State, County and Municipal Employees (hereinafter Union) negotiated a contract with the County Board which contained the following section:

*"ARTICLE XI—WAGE RATES, AND PAY DATES*

\*   \*   \*   \*   \*   \*

"Section 2. The following monthly and hourly wage rates herein attached shall be paid all employees within this jurisdiction. No lower or higher rates shall be paid, nor classification created during the life of these Rules and Regulations unless previously negotiated between the County and the Union."

This language was in all subsequent contracts including the one in effect at the time this dispute arose.

This dispute began on June 7, 1977, when the County Labor Relations Committee recommended the establishment of a job classification of Chemical Dependency Counselor Aide at pay grade 4. On June 14, the County Board, acting on recommendation of the Civil Service Commission, approved the new classification. These actions were taken without prior negotiation with the Union. The Union sued the County and the Civil Service Commission for refusing to abide by a validly negotiated contract as required by PELRA. The Union demanded injunctive relief and requested and received a T.R.O.

The action was heard in the St. Louis County District Court without a jury. The facts were stipulated.

The defendant County argued that the contract provision mandating negotiation prior to creation of new classifications, Article XI, para. 2, conflicted with the procedures of the St. Louis County Civil Service law. Under PELRA (specifically Minn. Stat. § 179.66, subd. 5) negotiated contracts cannot supersede "any statute of the State of Minnesota." Thus, defendant argued, negotiation was not required. Further, the creation of new classifications was purely a managerial right under PELRA, and it was beyond the power of the Board to permit the Union to be involved in the process. The trial court found that the procedure for the creation of new positions is controlled by the St. Louis County Civil Service law; that any contractual provisions to the contrary are void, specifically Article XI, Section 2, of the collective bargaining agreement. The court further found that the County and Civil Service Commission are not required to negotiate with the Union as to minimum requirements and job specifications for new positions in the Civil Service classified system, but must negotiate as to wages. The County understood this to mean that it must negotiate, as to a new job classification, but that it is limited to raising or lowering the salary by one pay grade in accord with § 5(f) of the St. Louis County Civil Service law. The trial court confirmed this view when it clarified its decision after a request by plaintiff to have defendant found in contempt of the court's original order.

1. PELRA states that an employer must negotiate in good faith on terms and conditions of employment. Minn.Stat. § 179.66, subd. 2, provides: "A public employer has an obligation to meet and negotiate in good faith with the exclusive representative of the public employees in an appropriate unit regarding grievance procedures and the terms and conditions of employment, but such obligation does not compel the public employer or its representative to agree to a proposal or require the making of a concession."

2. The St. Louis County Civil Service law limits the ability of the county to negotiate by giving certain powers to the Civil Service Commission: "[I]t shall be [the Civil Service director's] duty to:

\* .\* \* \* \* \*

The Union appeals, contending (1) that PELRA controls over the St. Louis County Civil Service law so as to make job specifications and requirements a subject of negotiation between employees and employers; (2) that in any case, the St. Louis County Civil Service law does not preclude respondents from negotiating job specifications and requirements, as they have done in the past; and (3) that it is an unfair labor practice for the County to avoid negotiation by giving over their power to the St. Louis County Civil Service Commission.

I.

Appellant Union argues that PELRA (Public Employees Labor Relations Act)[1] supersedes the St. Louis County Civil Service law[2] insofar as is necessary to uphold the Union-County labor contract. The Michigan Supreme Court considered a similar conflict between a county civil service law and a state labor relations act and concluded that the labor relations act repealed the county civil service law to the extent that the labor relations act placed rates of pay, hours of work, and other conditions of employment of public employees into the area of collective bargaining between the county and the Union. *Civil Serv. Com'n for County of Wayne v. Board of Supervisors*, 384 Mich. 363, 184 N.W.2d 201 (1971).

■ The Minnesota PELRA made a wide variety of factors subject to negotiation.

"prepare a schedule of salary or wage rates and ranges for each class, grade or group of positions in the classification. Such salary and wage schedules when approved by the civil service commission after public hearing shall be submitted to the board of county commissioners who may approve or reject such schedules.

\* \* \* \* \* \*

"Nothing in this section shall prevent the board of county commissioners from increasing or reducing the salary or wage rates of all positions in an entire grade or group uniformly, but it shall not increase the rate of pay of any class of positions beyond the rate in the next higher grade or group, nor reduce the pay of any grade or group below the rate of pay fixed for the next lower grade or group in the same service." L. 1941, c. 423, § 5(f).

For instance, it requires that public employers negotiate all "terms and conditions of employment." Minn.Stat. § 179.66, subd. 2. In addition, PELRA provides:

> A public employer is not required to meet and negotiate on matters of inherent managerial policy, which include, but are not limited to, such areas of discretion or policy as the functions and programs of the employer, its overall budget, utilization of technology, the organizational structure and selection and direction and number of personnel. Minn.Stat. § 179.66, subd. 1.[3]

This latter section only states that a public employer is *"not required"* to negotiate on "inherent managerial policy." PELRA also provides, however, that "[a] written contract or memorandum of contract containing the agreed upon terms and conditions of employment *and such other matters as may be agreed upon * * * shall be executed by the parties.*" (Italics supplied.) Minn. Stat. § 179.70. No provision in PELRA states that aspects of inherent managerial policy shall not be subjects of negotiation.

The present case shows that areas of "inherent managerial policy" and "terms and conditions of employment" may overlap. The Union objected to employees being paid a low rate while being required to perform many job specifications of higher rate employees. A public employer should be free to negotiate, if it wishes, by either raising the pay rate or eliminating job specifications. Since there is no provision to the contrary in PELRA, a public employer should be able to negotiate even matters of inherent managerial policy if it does so voluntarily.

With such a wide field for negotiation being allowed by PELRA, it is apparent that if PELRA is considered to supersede the St. Louis County Civil Service law, little will remain of that law.[4] We cannot presume that the legislature intended such a result.

## II.

Appellant next contends that the County and the Civil Service Commission may somehow waive rights they have under the Civil Service law. Thus, appellant claims,

**3.** Relying on PELRA, defendant contends that the County Board did not have the power to agree to negotiate on the creation of new classifications, at least as to job specifications and requirements, because it was a matter of "inherent managerial policy." Defendant cites *International Union of Operating Engineers v. City of Minneapolis*, 305 Minn. 364, 233 N.W.2d 748 (1975). That case, however, only considered the right of a public employer to refuse to negotiate on such subjects, not whether an employer has such power: "Appellant also argues that all matters relating to selection of personnel for promotion are exempt from the scope of the PELRA, basing the argument on § 179.66, subd. 1, which excepts from *mandatory* negotiation 'matters of inherent managerial policy.' This argument does not apply to the issue in this case, however." (Italics supplied.) 305 Minn. 372, 233 N.W.2d 754.

**4.** If we were to hold that the Civil Service law were superseded only to the extent of the contract language, we would be in the anomalous position of allowing a contract to repeal a state statute. We cannot accept this alternative inasmuch as PELRA precludes it. See, Minn. Stat. § 179.66, subd. 5, as interpreted in *Int'l Brotherhood of Teamsters v. City of Minneapolis*, 302 Minn. 410, 417–8, 225 N.W.2d 254, 258

(1975): " 'Any provision of any contract required by section 179.70 which of itself or in its implementation would be in violation of or in conflict with any statute of the state of Minnesota or rule or regulation promulgated thereunder or provision of a municipal home rule charter or ordinance or resolution adopted pursuant thereto, or rule of any state board or agency governing licensure or registration of an employee, provided such rule, regulation, home rule charter, ordinance, or resolution is not in conflict with sections 179.61 to 179.66 and shall be returned to the arbitrator for an amendment to make the provision consistent with the statute, rule, regulation, charter, ordinance or resolution. L.1973, c. 635, § 16.'

"Obviously, the statute, as amended, is unclear and difficult to understand. It appears that some words may have been inadvertently omitted. Further, the words 'shall be void and of no effect' have been deleted, whether intentionally or not. Under these circumstances, and with a lack of any clear indication as to what was intended, we must conclude, as did the district court, that in instances where a conflict arises between a provision in a contract required by § 179.70 and a provision of a home rule charter the legislature intended to give priority to the charter provision."

because the county has previously negotiated under the contract, it must still do so.

The cases appellant cites are inapposite in that all deal with a legal contract. See, *NLRB v. American Compress Warehouse, Div. of Frost-White Co.*, 350 F.2d 365 (5th Cir. 1965), *cert. denied*, 382 U.S. 982, 86 S.Ct. 558, 15 L.Ed.2d 472 (1966). The point of this lawsuit is that the contract, in requiring complete negotiation, is illegal, not merely the result of the County's waiving its rights.

## III.

Appellant also contends that respondent County committed an unfair labor practice by establishing the Civil Service Commission which limited its freedom to negotiate. Yet, plaintiff does not cite an applicable section of PELRA. Also, the Commission was established years before PELRA was passed by the legislature. It is true, however, that respondents did not make every reasonable effort to propose and secure the enactment of such laws necessary to implement the labor contract as required by Minn.Stat. § 179.70, subd. 2.[5] Appellant, however, cannot prevail against established law on the basis of the County's failure to attempt to change that law.

█ We conclude, then, that PELRA does not supersede the St. Louis County Civil Service law. Therefore, the County Board may not violate the Civil Service law in following such a contract. The Board must obey the dictates of such a contract to the full extent of its power to do so, however, including negotiating with the Union before taking any steps toward creation of new classifications or changing wage rates.

Affirmed in part; reversed in part; and remanded for further action in accordance with this opinion.

5. Minn.Stat. § 179.70, subd. 2, states: "The employer shall implement the terms of the contract in the form of an ordinance or resolution. If the implementation of the terms of the contract require the adoption of a law, ordinance, or charter amendment, the employer shall make every reasonable effort to propose and secure the enactment of such law, ordinance, resolution, or charter amendment."