## MINNESOTA FEDERATION OF TEACHERS, LOCAL 331, Petitioner, Appellant,

v.

## INDEPENDENT SCHOOL DISTRICT NO. 361, Respondent.

No. 50956.

Supreme Court of Minnesota.

Sept. 25, 1981.

Peterson, Engberg & Peterson and Bruce P. Grostephan, Minneapolis, for appellant.

Peterson, Popovich, Knutson & Flynn and James Knutson, St. Paul, for respondent.

SCOTT, Justice.

This appeal from an order denying the petitioner's motion to compel arbitration raises the issue of whether parties contracting pursuant to and in accordance with the Public Employment Labor Relations Act of 1971, Minn.Stat. § 179.61–.76 (1980) (PEL-RA), intended a dispute arising during the term of their agreement to be subject to arbitration. We reverse and remand.

The petitioner, Minnesota Federation of Teachers, Local 331 (union), is the exclusive representative for teachers employed by the respondent school district. The parties entered into a master agreement which was in effect at all times material to this dispute. On May 15, 1979, the board of education of the school district adopted a proposal increasing the teaching assignments of senior high school teachers beginning with the 1980–1981 school year. The board's new plan increased student contact time to five teaching periods plus one supervisory period in a seven-period day. The board's prior policy, which dated back to at least 1962, had been to assign senior high school teachers to four classes and a fifth period of supervision each day. The union filed this motion to compel arbitration pursuant to Minn.Stat. § 572.09 (1980) after the school district took the position that the board's action was a matter of inherent managerial policy and thus was not subject to arbitration.

The parties' master agreement states that the contract was entered into "to provide the terms and conditions of employment" for a two-year period. It defines "terms and conditions of employment" as "the hours of employment, the compensation therefore [sic], and economic aspects relating to employment, but [not] educational policies of the School District." The agreement was made subject to school board policies and applicable statutes, rules and regulations. One board policy to which the agreement was subject states:

Teachers may be assigned to any subject, extra-curricular activity, grade level, building, or classroom of the district as long as said teacher is certified to teach in the assigned area. A teacher may be re-assigned on the same basis. The teacher's daily teaching load shall be assigned according to the needs of the respective buildings and need not be uniform in regard to minutes of teaching and/or supervision. Assignment shall be made by the Superintendent of Schools, upon recommendation of the respective principals.

The agreement was subject to a rule of the State Board of Education which provides:

C. Teaching Load.

1. The maximum assignment of subjects for any teacher shall be five periods in a six-period day or six periods in a seven or eight-period day.

2. Each secondary school teacher shall have one period during the school day for preparation and conferences.

5 MCAR EDU 46(C)(1), (2) (1977). Finally, the agreement states that it is subject to the grievance procedure of the Bureau of Mediation Services.

■ In an action to compel or stay arbitration the issue of arbitrability "is to be determined by ascertaining the intention of the parties from the language of the arbitration agreement itself." *State v. Berthiaume*, 259 N.W.2d 904, 909 (Minn.1977). In *Atcas v. Credit Clearing Corp. of America*, 292 Minn. 334, 197 N.W.2d 448 (1972), we said:

(1) If the parties evinced a clear intent to arbitrate a controversy arising out of specific provisions of the contract, the matter is for the arbitrators to determine and not the court. (2) If the intention of the parties is reasonably debatable as to the scope of the arbitration clause, the issue of arbitrability is to be initially determined by the arbitrators subject to the rights of either party reserved under Minn.St. 572.19, subd. 1(3, 5). (3) If no agreement to arbitrate exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitrate (§ 572.-09[a, b]).

*Id.* at 341, 197 N.W.2d at 452.

The critical determination in the instant case is whether the increase in student contact time was a "term and condition of employment" or an "educational policy of the school district." The master agreement defines "the terms and conditions of employment" as "the hours of employment, the compensation therefore [sic], and economic aspects relating to employment." If the change is deemed to affect the "terms and conditions of employment," then arbitration is warranted.

■ The agreement defines the teachers' "basic day" as 8:10 a. m. to 3:50 p. m. Since the increase in student contact time cuts from two to one the number of periods available for class preparation, it appears that the new plan will lengthen the teachers' "hours of employment." In addition, there is merit in the appellant's contention that the new policy also affects the teachers' rate of "compensation" and thus the "economic aspects" of their positions. The teachers will be required to work longer hours at the same salary. For these reasons, it is our view that the *Atcas* "reasonably debatable" standard is applicable, and the issue of arbitrability should be initially determined by the arbitrators, subject to the rights of either party reserved under Minn.Stat. § 572.19, subd. 1(3), (5) (1980). The appellant has met the standard required under Minn.Stat. § 572.09(a) (1980) to prevail on a motion to compel arbitration.

■ Because of our conclusion that arbitration is appropriate, it becomes necessary to comment on the issue of whether the appellant brought a timely grievance. The appellant contends that it initiated the grievance procedure on June 11 by serving administrators and school board members with a letter protesting the change in "student contact time" and requesting that the board rescind the policy. The district court found that the grievance procedure was not initiated in a timely manner. The issue of whether the appellant complied with the time requirements of the master agreement should have been decided by an arbitrator. In *Brothers Jurewicz, Inc. v. Atari, Inc.*, 296 N.W.2d 422, 426–27 (Minn.1980), we said that the issue of whether the procedural prerequisites to arbitration have been complied with is generally to be determined by an arbitrator. Where, as here, the issue of arbitrability is reasonably debatable, an arbitrator should also decide this procedural issue, subject to the right of either party to appeal under Minn.Stat. § 572.19 (1980).

Reversed and remanded.

SIMONETT, Justice (concurring specially).

I agree that the applicability of the arbitration clause to the board's proposed action is "reasonably debatable," so that the matter should go to arbitration, including the timeliness of the grievance.

In my view the board's proposed action does not increase the hours of employment; the hours remain the same. It is only the duties to be performed in those hours that change. Petitioner claims that, notwithstanding the board's policy giving the superintendent the right to assign the daily teaching load, there exists a past practice of only four student contact hours in the basic day. This presents an issue as to the "common law of the shop," an issue which draws its "essence" from the collective bargaining agreement and which, therefore, is for the arbitrator to decide. *In the Matter of Arbitration Between Ramsey County vs. American Federation of State, County and Municipal Employees, Council No. 91, Local 8,* —— N.W.2d —— (Minn.1981), filed September 4, 1981.

Under the master contract and pursuant to Minn.Stat. § 179.66, subd. 1 (1980), the school board's inherent managerial rights include "direction * * * of personnel." If a change in the teaching load is a managerial prerogative, as it seems to me it is, it nevertheless has economic aspects affecting teachers' compensation, which aspects are terms and condition of employment and, as such, would be arbitrable. *Cf. International Union of Operating Engineers, Local No. 49 v. City of Minneapolis,* 305 Minn. 364, 373, 233 N.W.2d 748 (1975) (giving of competitive exams is a managerial right included in "selection * * * of personnel," but the fairness of the exam is a negotiable term and condition of employment).