MINNEAPOLIS ASSOCIATION OF AD-
MINISTRATORS AND CONSULT-
ANTS, Respondent,

v.

MINNEAPOLIS SPECIAL SCHOOL
DISTRICT NO. 1, Appellant.

No. 50870.

Supreme Court of Minnesota.

Oct. 23, 1981.

Rehearing Denied Dec. 16, 1981.

Fredrikson, Byron, Colborn, Bisbee &
Hansen and Frederick Finch and Kathleen
Hughes, Minneapolis, for appellant.

Rapoport, Singer, Wylde & Nordby and
Jack Nordby, Minneapolis, for respondent.

PETERSON, Justice.

Defendant Minneapolis Special School
District No. 1 appeals from a district court
judgment directing defendant to meet and
negotiate with plaintiff Minneapolis Associ-
ation of Administrators and Consultants,
the exclusive representative of a unit of
defendant's supervisory employees, regard-
ing a procedure for reorganizing defend-
ant's administrative staff.

In 1976, in response to sharply declining
enrollment and a reduced budget, defend-
ant decided to decrease its administrative
staff so that a greater proportion of its
resources could be devoted to classroom in-
struction. In order to consolidate adminis-
trative responsibility in fewer personnel,
seven positions within the bargaining unit
represented by plaintiff were divested of
administrative functions.[1] The seven posi-
tions were redefined as follows:

---

1. Four of the positions in question were divest-
ed of administrative functions by the transfer
to other personnel of administrative responsi-
bility for the programs involved. One position
became nonadministrative by virtue of the
elimination of the two positions subordinate to
it. The employees in the remaining two posi-
tions were found to be performing no adminis-

1. Coordinator of Driver Education and Safety, the position held by employee Richard LeCuyer, was redefined as Teacher on Special Assignment.

2. Project Administrator, North Area Learning Center, the position held by employee Duane Ramberg, was redefined as Counselor on Special Assignment, North Area Learning Center.

3. Research Associate, the position held by employee Larry Johnson, was redefined as Counselor, Unassigned.

4. Project Administrator, Task Force on Minority Cultures, the position held by employee Christian Skjervold, was redefined as Teacher on Special Assignment, Ethnic Cultural Task Force.

5. Project Administrator, Teacher Center, the position held by employee Alan Sweet, was redefined as Counselor, Unassigned.

6. Coordinator of Psychological Services, the position held by employee Jerry Tomlinson, was redefined as Psychologist, Unassigned.

7. Coordinator, Field Trips, the position held by employee Joseph Winter, was redefined as Teacher on Special Assignment, Field Trips.

For the employees who held the seven positions, the changes resulted in fewer work weeks per year, reduced salaries, and diminished fringe benefits. Defendant did not undertake to engage in collective bargaining with plaintiff regarding the changes in the positions.

In September 1977 defendant petitioned the Bureau of Mediation Services to eliminate the employees who held the seven positions from the bargaining unit represented by plaintiff. The bureau determined the employees' positions had been so altered that the positions were no longer supervisory in nature and the employees were therefore no longer members of the bar-

gaining unit. The Public Employment Relations Board affirmed the bureau's determination.

In May 1978 plaintiff commenced the present action in Hennepin County District Court. Plaintiff alleged defendant committed unfair labor practices entitling plaintiff to injunctive relief and damages when it divested the seven positions of their administrative functions without engaging in collective bargaining. The facts were stipulated and the matter was heard upon the parties' cross-motions for summary judgment. By an order dated August 31, 1979, the district court granted plaintiff's motion and denied defendant's motion. The district court made no explicit findings of unfair labor practices. It ordered that "[d]efendant shall meet and negotiate with [p]laintiff in good faith over criteria to implement reassignments or demotions made necessary because of administrative reorganization" and that "[i]n the future, prior to removal or transfer of functions, duties or responsibilities from [plaintiff] or its members, the parties hereto shall meet and negotiate." The district court further ordered defendant to reinstate the seven employees to their former positions and reimburse them for any loss of wages or fringe benefits they had sustained. Defendant now appeals from the judgment. We reverse.

This case presents the question whether the Public Employment Labor Relations Act (PELRA), Minn.Stat. §§ 179.61–.76 (1976), requires defendant to meet and negotiate with plaintiff regarding a procedure for determining which supervisory employees are to lose administrative responsibility.[2]

PELRA governs labor relations in the public sector. Section 179.66, subdivision 4, imposes upon a public employer the obligation to meet and negotiate in good faith with the exclusive representative of its supervisory employees regarding the terms and conditions of their employment. Sec-

trative functions. Their positions were reclassified as nonsupervisory.

2. Our decision on this question makes it unnecessary for us to address the issue whether the

finality clause of the parties' collective bargaining agreement precludes plaintiff from challenging defendant's action.

tion 179.63, subdivision 18, defines "terms and conditions of employment" as "the hours of employment, the compensation therefor including fringe benefits except retirement contributions or benefits, and the employer's personnel policies affecting the working conditions of the employees." This definition, however, is "subject to the provisions of section 179.66 regarding the rights of public employers and the scope of negotiations." Section 179.66, subd. 1, provides that "[a] public employer is not required to meet and negotiate on matters of inherent managerial policy, which include, but are not limited to, such areas of discretion or policy as the functions and programs of the employer, its overall budget, utilization of technology, the organizational structure and selection and direction and number of personnel."

PELRA thus requires defendant to meet and negotiate with plaintiff concerning terms and conditions of employment. At the same time it reserves to defendant the right to refuse to meet and negotiate concerning matters of inherent managerial policy. *See Minnesota Arrowhead District Council 96 v. St. Louis County*, 290 N.W.2d 608, 611 (Minn.1980); *International Union of Operating Engineers, Local No. 49 v. City of Minneapolis*, 305 Minn. 364, 372–73, 233 N.W.2d 748, 754 (1975). The decision to decrease administrative staff as a means of dealing with declining enrollment and a reduced budget concerns defendant's organizational structure and the selection and direction and number of its personnel. Without question it is a decision regarding matters of inherent managerial policy. The district court recognized this. In the memorandum accompanying its order it stated, "the determination of the level of services provided by [defendant] appears to be a managerial decision." The district court held, however, that the procedure defendant used to determine which individual employees were to lose administrative responsibility was within the terms and conditions of their employment and therefore a subject of mandatory negotiation.

In so holding the district court relied on *Minneapolis Federation of Teachers, Local 59 v. Minneapolis Special School District No. 1*, 258 N.W.2d 802 (Minn.1977). The school district in that case had decided to reduce its teaching staff by 100 positions. It placed 148 teachers with low seniority in a reassignment pool but excepted from the pool 31 teachers whose seniority would otherwise have required their inclusion. The union disapproved the large number of exceptions from the rule of transfers based on seniority and brought a declaratory judgment action for a determination that PELRA required the school district to meet and negotiate with the union regarding teacher transfer procedures. The school district responded that the transfer of teachers involved the selection and direction and number of personnel and therefore was a matter of inherent managerial policy concerning which it had no duty to meet and negotiate. In resolving the dispute we drew a distinction between the decision to transfer a number of teachers and the selection for transfer of an individual teacher from the reassignment pool. The former we concluded was a managerial decision; the latter we held a subject of mandatory negotiation.

No similar distinction can be drawn in this case. The decision to divest a particular position of administrative functions is of necessity a decision to take administrative responsibility from the employee who holds the position. For the seven employees here that decision affected terms and conditions of employment because the loss of administrative responsibility was accompanied by reductions in wages, fringe benefits and assignments. That impact, however, does not render the manner in which the basic decision is made a subject of mandatory negotiation. If the manner in which the decision is made is a matter of inherent managerial policy, defendant may not be required to meet and negotiate concerning it.

In *Minneapolis Federation of Teachers* we concluded the legislature intended to give the school board "direction over the broad educational objectives of the entire district" when it included "selection and direction and number of personnel" among

examples of matters of inherent managerial policy. 258 N.W.2d at 805. Requiring the school board to meet and negotiate regarding a teacher transfer procedure was not likely to hamper the school board's direction of educational objectives. Therefore, the procedure was not a matter of inherent managerial policy.

The decision to divest a particular position of administrative functions does concern a matter of inherent managerial policy—the school district's organizational structure. In any complex organization, administrative responsibility must be delegated. Delegating administrative responsibility entails choosing the positions which are to carry such responsibility. That choice, as this case illustrates, may have substantial consequences for the employees involved. Nevertheless, the choice must be discretionary if defendant is to establish properly the school district's organizational structure. Therefore, defendant may not be required to meet and negotiate with plaintiff concerning the method of determining which positions to divest of administrative functions.[3]

The judgment of the district court is accordingly reversed.

Reversed and remanded.

SCOTT, Justice (dissenting).

I must respectfully dissent. The issue in the instant case is simple—whether an employer subject to the Public Employment Labor Relations Act of 1971 (PELRA), Minn.Stat. §§ 179.61–.77 (1980), may unilaterally alter an employee's duties, assign-

ment, and salary under what appellant describes as "administrative reorganization of its functions and programs." The majority answers this question in the affirmative. I respectfully disagree. The result reached by the majority opinion does not comport with public policy, and is inconsistent with our prior PELRA opinions.

As a result of the majority opinion, management now has the ex parte right to define what is managerial. PELRA was never intended to permit this result. When reasonable minds may differ as to the division between "terms and conditions of employment" and matters of "inherent managerial" discretion, all disputes must be resolved in favor of the strong public policy served by negotiation. Such reasoning finds support in *International Brotherhood of Teamsters Local 320 v. City of Minneapolis*, 302 Minn. 410, 225 N.W.2d 254 (1975), in which we stated:

A major purpose of PELRA is to further the resolution of labor disputes through negotiation. Because of the severe restrictions on strikes contained in the act, we believe that the legislature intended the scope of the mandatory bargaining area to be broadly construed so that the purpose of resolving labor disputes through negotiation could best be served.

*Id.* at 415, 225 N.W.2d at 257 (footnote omitted).

Unlike the majority, I find the instant case analogous to that in *Minneapolis Federation of Teachers, Local 59 v. Minneapolis*

---

**3.** What plaintiff here contends is required by statute, plaintiff also undertook to achieve in negotiations with defendant for a new collective bargaining agreement. In April 1977 plaintiff notified defendant that it desired to meet and negotiate with defendant regarding modifications of the collective bargaining agreement which would expire on June 30, 1977. Plaintiff proposed that the collective bargaining agreement be modified to prohibit major changes in job duties without the mutual agreement of plaintiff and defendant. Defendant refused to negotiate regarding this proposed modification, claiming the matter was one of inherent managerial policy. In March 1978 plaintiff petitioned the Bureau of Mediation Services alleging the parties had reached

an impasse and requesting binding arbitration. Plaintiff's proposed modification was one of the issues certified for arbitration. The arbitrator's award on that issue was "[defendant] agrees that during the term of this Agreement it will not change the major duties of any classification within the bargaining unit without notifying [plaintiff]." The arbitrator commented that "[t]he award will keep the channel of communication open between the parties, but will not give [plaintiff] veto power over an administrative decision to change major job duties when it becomes necessary." The arbitrator's award was included among the provisions of the collective bargaining agreement later executed by the parties.

*Special School District No. 1*, 258 N.W.2d 802 (Minn.1977) in which we quoted at length from the *International Brotherhood of Teamsters* case. In *Minneapolis Federation of Teachers, Local 59*, we held that although the decision to transfer a large number of teachers is managerial, the criteria for determining which teachers are to be transferred is negotiable. Similarly, the procedures for effecting a reduction in supervisory personnel should also be negotiable.

The majority opinion also departs from *International Brotherhood of Teamsters Local 320*, in which we held that a reprimand and 30-day suspension without pay of a union employee by the City of Minneapolis "are not within inherent managerial policy." 302 Minn. at 416, 225 N.W.2d at 257–58. In the *International Brotherhood of Teamsters* case we did not permit management to reduce by one-twelfth the yearly wages of the suspended employee. Yet, in the instant case, the majority. permits the following reductions in pay upon employees who have not done anything wrong:

| | |
|---|---|
| Johnson: | $30,368 down to $23,070 |
| Skjervold: | $26,182 down to $23,070 |
| Sweet: | $30,966 down to $23,070 |
| Tomlinson: | $26,649 down to $20,740 |
| Winter: | $31,070 down to $22,525 |

Where, as here, the transfer of duties is so significant that it causes a substantial reduction in pay and fringe benefits, and results in ouster from the bargaining unit that represents the employees, the criteria for determining which supervisory personnel are to be transferred should be negotiable.[1]

TODD, Justice (dissenting).

I join in the dissent of Justice SCOTT.

YETKA, Justice (dissenting).

I join in the dissent of Justice SCOTT.

WAHL, Justice (dissenting).

I join in the dissent of Justice SCOTT.

---

**1.** *See Minnesota Federation of Teachers, Local 331 v. Independent School District No. 361*, 310 N.W.2d 482 (Minn.1981).