**LAW ENFORCEMENT LABOR SERVICES, INC., Appellant,**

v.

**COUNTY OF HENNEPIN and Donald Omodt, as Hennepin County Sheriff, Respondents.**

No. CX–88–2341.

Court of Appeals of Minnesota.

April 18, 1989.

Review Granted June 9, 1989.

Gregg M. Corwin, Phillip Finkelstein, Gregg M. Corwin and Associates, St. Louis Park, for appellant.

Tom Johnson, Hennepin County Atty., Karla Hancock, Charles Sweetland, Asst. County Attys., Minneapolis, for respondents.

Heard, considered and decided by HUSPENI, P.J., and CRIPPEN and Leslie *, JJ.

## OPINION

CRIPPEN, Judge.

Law Enforcement Labor Services appeals a summary judgment concluding that a personnel policy on grooming constitutes a matter of inherent managerial policy the employer could unilaterally impose without contract negotiations under the Public Employment Labor Relations Act (PELRA). We reverse.

## FACTS

Effective May 16, 1988, respondent Hennepin County Sheriff's Department adopted a revised grooming policy, an eight page statement regulating length and style of hair, mustache and fingernails, and use of cosmetics and jewelry. The policy called for presentation of a neutral image that neither draws attention to the individual nor could be offensive to others.

Appellant, a labor union representing employees of the sheriff's department, sought a temporary and permanent injunction, claiming that the grooming policy was a term and condition of employment as defined in PELRA that could be imposed only through contract negotiation. The trial court concluded the department could unilaterally impose the grooming policy.

## ISSUE

Does the department's grooming policy, aimed at personal appearance, constitute a term and condition of employment to be negotiated under the Public Employees Labor Relations Act?

## ANALYSIS

Under PELRA, a public employer has an obligation to meet and negotiate in good faith with the exclusive representative of public employees regarding grievance procedures and the terms and conditions of employment. Minn.Stat. § 179A.07, subd.

2 (1988). The statute defines terms and conditions of employment to mean hours and benefits, "and the employer's personnel policies affecting the working conditions of the employees." Minn.Stat. § 179A.03, subd. 19 (1988).

In contrast, the statute does not require negotiation for matters of inherent managerial policy. Those matters are defined to include areas of discretion or policy such as "the functions and programs of the employer, its overall budget, utilization of technology, the organizational structure, selection of personnel, and direction and the number of personnel." Minn.Stat. § 179A.07, subd. 1 (1988).

■ The Minnesota courts recognize that the distinction intended by the legislature between "terms and conditions of employment" and "matters of inherent managerial policy" has become far from distinct. *University Education Association v. The Regents of the University of Minnesota*, 353 N.W.2d 534, 539 (Minn.1984). However, it is established that the scope of the mandatory bargaining area is to be broadly construed so that the purpose of resolving labor disputes through negotiation can best be served. *Id.* at 538; *In re Law Enforcement Labor Services*, 414 N.W.2d 452, 457 (Minn.Ct.App.1987). Thus, we review the extent to which inherent managerial policy was judicially identified outside the broadly construed purposes of PELRA.

Prior appellate opinions have recognized inherent managerial policies in matters of tenure, training, reorganization of administrative staff, transfer of teachers, and the administration of civil service exams. *See, University Education Association v. The Regents of the University of Minnesota*, 353 N.W.2d 534 (Minn.1984); *St. Paul Fire Fighters, Local 21 v. City of St. Paul*, 336 N.W.2d 301 (Minn.1983); *Minneapolis Association of Administrators and Consultants v. Minneapolis Special School District No. 1*, 311 N.W.2d 474 (Minn.1981); *Minneapolis Federation of Teachers, Local 59 v. Minneapolis Special School District No. 1*, 258 N.W.2d 802 (Minn.1977);

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

*International Union of Operating Engineers, Local No. 49 v. City of Minneapolis*, 305 Minn. 364, 233 N.W.2d 748 (Minn.1975). Most pertinent to this case is the decision of this court which considered regulation on uniforms of police personnel to be a matter of inherent managerial policy. *Law Enforcement Services, Inc. v. City of Roseville*, 393 N.W.2d 670, 672 (Minn.Ct.App.1986).

The trial court relied on *City of Roseville*, and concluded that inherent managerial policy is to be extended to govern the regulation of grooming habits aimed at controlling the personal appearance of respondent's police personnel.

Respondents suggest the supreme court shows an inclination to narrow the scope of bargaining under PELRA and enlarging the definition of inherent managerial policy. Moreover, respondents contend that the past practice of respondents in unilaterally imposing grooming conditions without objection by appellants or any other predecessor union supports a finding that the grooming policy is a matter of inherent managerial policy.

The issue here is limited. Consistent with the evidence of record, the trial court did not premise its holding on an assumption that the department's grooming policy served health or safety purposes. Rather, the court decided that the employer could unilaterally establish policy aimed solely at the personal appearance of police agency personnel. The trial court observed:

> [T]herefore, because the policy in question primarily, if not exclusively, deals with the physical appearance of the employees, and does not significantly touch upon health, hygiene or safety, this court will not view it as encompassing those matters.

Respondents contend that a grooming practice could in some instances affect the physical performance and safety of police personnel. They argued, however, that the standards incorporated in this grooming policy relate mostly to indirect effects of personal appearance. Thus, respondents observe that regulation of personal appearance bears on the identification and acceptance of police personnel, the ability of the employees to be neat, professional, and sexually neutral, and the improved discipline of employees in a "para-military operation."

Recognizing the statutory scheme and precedents on inherent managerial policy, we find no license to extend them to include the entire topic of personal appearance of police agency personnel, bearing only indirectly on their job performance. The scope of bargaining under PELRA is to be broad. Also, despite the fact that the department's grooming policy was never negotiated, no appellate decisions suggest that classifications of labor issues under PELRA are governed by prior labor practices.

Because the issue here is limited as indicated, our decision on review does not address grooming practices tied to health or safety concerns.

■ The trial court concluded that appellant's interest in grooming is trivial. The court, referring to decisions in other states which attempt to balance the interests of employers and employees, concluded that regulation of grooming is more important to the employer than the employee. Minnesota cases do not recognize such a balancing of interests. Instead, the supreme court emphasizes the breadth of bargaining expected under PELRA, and demonstrates the cautious recognition of working conditions the employer must be free to impose unilaterally. Appellant's interest in grooming practices is significant to individual employees, directly affecting their welfare on and off the job. Regulations on grooming affect the employee's working conditions. *See Minneapolis Federation of Teachers, Local 59 v. Minneapolis Special School District No. 1*, 258 N.W.2d 802, 805 (Minn. 1977) (the criteria for the administrative decision to transfer teachers directly affected the welfare of the employee and was therefore a term and condition of employment).

## DECISION

We do not decide here whether or not the Hennepin County Sheriff's Department can

have or should have a grooming policy aimed at personal appearance of employees. Rather, the issue here is whether that subject is one requiring negotiation as a matter of public labor law. Consistent with the broad scope of bargaining required under PELRA and the legislative wish for resolving labor disputes through negotiation, we conclude that the subject is negotiable under the Act.

Reversed.