**ST. PAUL FIRE FIGHTERS, LOCAL 21, Respondent,**

v.

**CITY OF ST. PAUL, Appellant.**

**No. C4–82–765.**

Supreme Court of Minnesota.

July 15, 1983.

Edward P. Starr, City Atty., and Terry Sullivan, Asst. City Atty., St. Paul, for appellant.

Foster, Jensen & Cade and Thomas H. Jensen, Minneapolis, for respondent.

COYNE, Justice.

The City of St. Paul appeals from an order of the district court permanently enjoining the City from assigning or transferring veteran fire captains to an Officers Training Program without first negotiating with St. Paul Fire Fighters, Local 21, the exclusive representative of all non-supervisory uniformed fire fighters employed by the City, including 104 fire captains. We affirm as modified herein.

In 1975 the City instituted an Officers Training Program (OTP) for fire captains, consisting of a 27-week rotating assignment to four divisions of the fire department. While participating in the OTP, a fire captain reports to department headquarters instead of the fire station to which he is regularly assigned, and another fire captain or a senior fire fighter performs the captain's duties during his absence. Fire captains customarily work duty shifts of 24 hours; the average work week is 56 hours. Although OTP participants work 24-hour shifts while assigned to the arson division, the remainder of the program involves a regular 40-hour work week, Monday through Friday. All OTC participants, including those fire captains eligible for premium paramedic or emergency medical technician (EMT) pay, receive their regular base pay according to seniority.[1]

Pursuant to the reverse seniority system, newly assigned fire captains were the first assigned to the OTP, and 53 of the fire department's 104 captains have participated in the program. In November of 1981, however, the City notified four veteran fire captains that they were to participate in the OTP. At that time two of the four were receiving 3% EMT premium pay, the third was receiving 6% paramedic premium pay, and the fourth was being paid the base rate. Following objection by one of the four captains, Local 21 instituted this action on behalf of all four captains.

As we have previously observed, areas of "inherent managerial policy" and "terms and conditions of employment" oftentimes overlap. *Minnesota Arrowhead District Council 96 of American Federation of State, County and Municipal Employees v. St. Louis County,* 290 N.W.2d 608, 611 (Minn.1980). A decision in respect of a matter of inherent managerial policy—a discretionary decision which a public employer is not required to negotiate—may well impinge upon negotiable terms and conditions of employment. Minn.Stat. § 179.66 (1982). The impact upon the terms and conditions of employment of an inherent managerial policy decision does not, however, render the policy decision a subject of mandatory negotiation if the decision and its implementation are so inextricably interwoven that requiring the public employer to meet and negotiate the method of carrying out its decision would require the employer to negotiate the basic policy decision. *See Minneapolis Association of Administrators and Consultants v. Minneapolis Special School District No. 1,* 311 N.W.2d 474, 476–77 (Minn.1981). If, however, the inherent managerial policy decision is severable from its implementation, the effect of implementation on the terms and conditions of employment is negotiable to the extent that negotiation is not likely to hamper the employer's direction of its functions and objectives. *Minneapolis Federation of Teachers, Local 59 v. Minneapolis Special School District No. 1,* 258 N.W.2d 802, 805 (Minn.1977); *International Union of Operating Engineers v. City of Minneapolis,* 305 Minn. 364, 233 N.W.2d 748 (1975).

The trial court enjoined the City from assigning veteran fire captains to the OTP on the ground that the manner of determining which fire captains should participate in the program was not a decision fundamental to the existence, direction and operation of the fire department. Since it cannot be seriously disputed that participation in the program affects the terms and

---

1. The collective bargaining agreement between the City and Local 21, authorized by the Public Employees Labor Relations Act (PELRA), Minn.Stat. §§ 179.61 to 179.76 (1982), provides a base rate of pay which increases with seniority and also 6% premium pay for those with paramedic training and 3% premium pay for those with EMT training.

conditions of employment as defined by Minn.Stat. § 179.63, subd. 18, had the decision been to designate some, but not all, fire captains for participation in the OTP, the adoption of selection criteria would have been an appropriate subject for negotiation. *See Minneapolis Federation of Teachers, Local 59 v. Minneapolis Special School District No. 1,* 258 N.W.2d 802, 805 (Minn. 1977). The City's actual decision—to establish an Officers Training Program in which *all* fire captains, veterans as well as those newly appointed, must participate—is a policy decision directly related to the management of a traditional governmental function. To require the City to negotiate either the form and content of the program or criteria for exempting some fire captains would be to require negotiation of the basic policy decision, which we hold is a nonnegotiable matter of inherent managerial policy.

█ We conclude, however, that certain aspects of the implementation of the Officers Training Program which directly affect the terms and conditions of the fire captains' employment are severable from the inherent managerial policy decision and are appropriate subjects for negotiation. Certainly, a fire captain's entitlement to paramedic or EMT premium pay during participation in the training program involves a term of employment which is merely collateral to the policy decision and is, therefore, negotiable. Although the requirement that all fire captains participate in the prescribed course of training is fundamental to the inherent managerial policy decision, whether the requirement be fulfilled by 27 consecutive weeks of participation or by alternate assignment to line duty and each of the four training units involves working conditions and is neither essential to the basic decision nor inimical to public safety and welfare. Minn.Stat. § 179.61 (1982). Nor is requiring negotiation with respect to these aspects of implementation of the OTP likely to hamper the City's objectives. We hold, therefore, that the City is required to negotiate entitlement to premium pay during participation in the OTP and the manner in which the participation requirement is to be fulfilled—i.e., whether the partici-

pation requirement is to be fulfilled during a single assignment to the OTP or by alternate assignments to line duty and training units.

The City also contends that Local 21 is precluded by laches and the doctrine of past practice from asserting its statutory right to negotiation. On a review of the record, we conclude that the trial court properly rejected the City's contentions.

Affirmed as modified.