In the Matter of Grievance Arbitration between: LAW ENFORCEMENT LABOR SERVICES, INC., LOCAL NO. 19, and Hennepin County Sheriff's Office.

In Re Interest Arbitration Before LAW ENFORCEMENT LABOR SERVICES INC., LOCAL NO. 19, and Hennepin County Sheriff's Office.

No. CX–87–580.

Court of Appeals of Minnesota.

Oct. 27, 1987.

---

1. As per the size and boldness requirements of the judgment as amended.

Thomas L. Johnson, Hennepin Co. Atty., Charles F. Sweetland, Asst. Co. Atty., Minneapolis, for appellant County.

Phillip I. Finkelstein, Bloomington, for respondent Union.

Considered and decided by POPOVICH, C.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

These disputes involve personnel transfer decisions under the terms of a collective

bargaining agreement between respondent Law Enforcement Labor Services, Inc., Local No. 19 (Union) and appellant Hennepin County Sheriff's Office (County).

The County appeals from a judgment entered following the district court's denial of consolidated motions to vacate a grievance award and an interest award. Both awards essentially hold that decisions to transfer deputies to other work divisions within the County are subject to arbitral review. On appeal, the County contends that because those decisions are matters of inherent managerial policy under Minn. Stat. § 179A.07, subd. 1 (1984), the arbitrators exceeded their powers and that both awards must be vacated under Minn.Stat. § 572.19, subd. 1(3) (1984). We disagree and affirm.

## FACTS

The County sheriff's office is divided into several divisions such as Jail, Service, Radio, Patrol, Water Patrol, Warrants and Civil. Prior to 1983, the contracts between the Union and the County had no provisions concerning the filling of vacant positions, and deputies apparently had little opportunity to move into divisions matching their interest.

Following expiration of the 1982 contract, the parties entered into negotiations and reached impasse on several issues. An interest arbitrator, Thomas P. Gallagher, was selected to resolve those disputes. Arbitrator Gallagher awarded the following pertinent language:

[ARTICLE VII, Departmental Vacancies] Section 5.

A. The Employer shall post a notice of any vacant position for a period of not less than seven days in all work units. Any permanent employee interested in the position who a) is in the same classification, and b) is assigned to a different work unit, may apply for the position by filing with the Employer a notice of such employee's interest not later than seven days after the end of such seven-day posting.

B. The notice of vacant position shall set forth, with respect to such position, its class title, salary range, work unit, the nature and location of the work to be performed, the minimum qualifications, the place and manner of application and the last date upon which applications will be received. * * *

C. The Employer shall select the most senior applicant for the vacant position, unless the Employer shall determine from a) a review of the applicant's personnel file and work record, b) an interview, and c) a comparison of the qualifications of the applicant with those of other applicants for the job, that such senior applicant does not have qualifications substantially equal to those of a junior applicant. Upon such a determination, the Employer may select such junior applicant if there is no other senior applicant with substantially equal qualifications.

\* \* \* \* \* \*

F. A vacant position means a vacancy intended to be permanently filled for a period of more than six consecutive months duration in the Sheriff's Department caused by the creation of a new position, transfer, promotion, demotion, discharge, retirement, re-assignment or death.

\* \* \* \* \* \*

I. If it becomes necessary for the Employer to make an involuntary transfer into or out of a work unit (whether because of lack of qualified bidders or for other cause), the Employer shall assign to the position to which the transfer is to be made the most junior employee in the relevant classification. If, however, there is just cause—one reasonably related to the efficient operation of the Sheriff's Department—to assign to the position an employee senior to such junior employee, the Employer may make such assignment. The Employer shall exercise the right of involuntary transfer secured by this paragraph in good faith and not with intent to defeat the right of employees to bid for vacancies or with intent to deny other contract rights.

No appeal was taken from Arbitrator Gallagher's award, and this language was incorporated into the 1983–1984 contract.

When the contract expired in 1984, the County gave written notice to the Union that it wished to delete section 5 entirely. The Union responded that the language should remain unchanged. Negotiations proceeded and the parties reached impasse on this and several other issues relating to seniority. The matter was referred to binding arbitration and the parties selected Christine VerPloeg as *interest* arbitrator.

Because the parties resolved all other issues, a 1985–1986 contract was executed prior to the completion of arbitration. This contract specifically provided that the language from section 5 was to remain in force until such time as the interest arbitrator issued a decision.

While this matter was in interest arbitration, a controversy arose over the County's use of involuntary transfers to fill vacancies in its Service division. On March 11, 1985, the County posted a notice of vacancies in the Service division which set forth the minimum qualifications and a general description of the job duties. On April 1, 1985, the County posted a seniority list of deputies who had applied for transfer to the Service division.

On June 24, 1985, four deputies ranking 5, 6, 7, and 8 on the seniority list were notified that they were being temporarily transferred to the Service division. Six months later in December 1985, these four deputies were transferred back to the Jail division. Since then the County has continued to fill the four vacancies in the Service division by temporary transfers.

In response to these actions, the Union filed a lawsuit in district court alleging unfair labor practice and seeking temporary and permanent injunctive relief, damages and attorney fees. The Union also submitted a letter to the County seeking grievance of the County's decision not to fill the four Service division vacancies with permanent transfers and demanding that "the Employer immediately fill the permanent positions in Service Division by selecting the senior bidders from the established list." Following a hearing in district court, expedited *grievance* arbitration was ordered and Joseph Bard was selected as arbitrator.

In an award issued May 21, 1986, interest Arbitrator VerPloeg continued the language of Article VII, section 5 which had been inserted in the 1983–1984 contract by Arbitrator Gallagher. In reaching this award, Arbitrator VerPloeg phrased the issue as whether the sheriff's selection decisions should be excluded from the arbitration step. After analyzing recent case law, she concluded that she was not prepared "to find that selection decisions are, for any public employer in Minnesota, matters of inherent managerial policy which are subject neither to the negotiation process nor to the grievance process or arbitral review."

In an award issued June 9, 1986, grievance arbitrator Joseph Bard determined that under the terms of the contract the issue of seniority bidding was grievable. He further determined that the County had used temporary transfers to avoid following the seniority bidding provision of section 5 of the contract. In accordance with that section, Arbitrator Bard's award stated that the most senior deputies on the list "shall be immediately transferred" to the Service division.

The County thereafter brought separate motions in district court to vacate the two awards. Pursuant to the Union's request, these two motions were consolidated. In denying these motions and confirming both awards, the district court concluded that the County had waived any inherent managerial right in the selection process by the specific language of Article VII, section 5.

This appeal followed entry of judgment.

## ISSUES

1. Did the interest arbitrator properly assume jurisdiction over this matter?

2. Was the grievance arbitrable?

## ANALYSIS

■■■ Judicial review of this case is limited to the issue of arbitrability, or whether

the arbitrators exceeded their powers. As the objecting party, the County has the burden of proving the invalidity of the awards. *State v. Berthiaume*, 259 N.W.2d 904, 909 (Minn.1977). While this court may be aided by the arbitrators' determination of arbitrability, our review of the issue is de novo. *Id.* The arbitrators' decisions on the merits of the dispute, however, are irrelevant to the issue of arbitrability and must be disregarded. *Id.* at 909–10.

## I

The County argues that its position on the issue of arbitral review of transfer decisions was misconstrued. It contends that it has never maintained that the *criteria* for transfer are not proper negotiation subjects. It claims that its position was as follows: challenges are allowed only as to the *procedure* employed in a transfer decision, and the County's *substantive* decision is not subject to arbitral review so long as it can demonstrate that it has followed the proper procedure. The County contends that such a position is in accordance with *University Education Association v. Regents of the University of Minnesota*, 353 N.W.2d 534 (Minn.1984).

In *Regents*, one of the issues was whether tenure and promotion decisions of the University were terms and conditions of employment and thus subject to arbitral review. Noting that the issue involved both matters of inherent managerial policy and the terms and conditions of employment, the supreme court utilized the two-prong test first set out in *St. Paul Fire Fighters, Local 21 v. City of St. Paul*, 336 N.W.2d 301, 302 (Minn.1983).

Under *St. Paul Fire Fighters*, the impact a particular policy decision has upon terms and conditions of employment is determined. If the policy does "impinge upon negotiable terms and conditions of employment," 336 N.W.2d at 302, then we are required to determine whether the policy and terms and conditions are so "inextricably interwoven" that negotiation of the issue involves negotiation of the policy. Thus, the second prong of *St. Paul Fire Fighters*, entails ascertaining

whether the policy and its implementation are separable. If the policy and its implementation are distinct, then negotiation is mandatory with respect to issues relating to the implementation of the policy. *See Minneapolis Federation [of Teachers Local 59 v. Minneapolis Special School District No. 1]*, 258 N.W.2d 802, 805–06 (Minn.1977).

*Regents*, 353 N.W.2d at 539.

After discussing the effect of tenure and promotion policies on the educational goals of an institution, the *Regents* court discussed *Minneapolis Federation:*

In *Minneapolis Federation*, we held that the decision to transfer a number of teachers was a managerial decision directly concerning the educational objectives of a school district, but that the "criteria for determining which teachers are to be transferred * * * involves a decision * * * [that is] negotiable." 258 N.W.2d at 805. *Minneapolis Federation* is significant because of the dicta recognizing the managerial character of educational objectives. Moreover, there is a crucial distinction between the instant case and *Minneapolis Federation*. In *Minneapolis Federation* we determined that the criteria used to determine whether an employee will be transferred from one working place to another were not irreversibly intertwined with the educational objectives of a school district. The substantive criteria used to determine whether a faculty member should be granted tenure, however, *are* irreversibly intertwined with the educational policies and objectives of the University of Minnesota.

*Regents*, 353 N.W.2d at 540.

Although the court determined that the "subjective criteria used to determine promotion and tenure" were matters of inherent managerial policy, it found this policy to be severable from its implementation. *Regents*, 353 N.W.2d at 541. The contract between the University and the faculty's union recognized this distinction, and expressly allowed negotiation of the procedures used to determine tenure and pro-

motion but excluded the subjective decisions from grievance:

> The decision, the criteria upon which such decision was made, all recommendations leading us to the decision and the reasons for such recommendations *shall not be grievable. The Member may bring a grievance alleging that the procedure* for promotion or conferral of Indefinite Tenure described in this Section 201.400 was not followed, * * *.

*Id.* (emphasis in original).

 The County urges that *Regents* reflects the modern trend toward expanding the scope of managerial policy and that the persuasive value of cases prior to *Regents* (such as *Minneapolis Federation*) is now questionable. A careful reading of *Regents* and of the above quoted paragraphs suggests otherwise. Decisions relating to personnel transfers are not presumptively matters of inherent managerial policy; the burden remains on the employer to show that those decisions are "inextricably intertwined" with basic policy goals of its office or institution. In this case, the County has failed to meet its burden.

Acceptance of the County's position would impliedly add contract language similar to that contained in the contract involved in *Regents*. Arbitrator VerPloeg's decision recognizes this point in passing:

> Further support for the County's proposal is found in the agreement which it has negotiated with AFSCME, an organization that represents about 80 percent of the County's exclusively represented employees. The AFSCME agreement, which has been in force for some six years, balances the parties' interests by affording employees the right to be informed of vacancies and by ensuring that senior employees will be considered for vacancies before they are filled. How-

ever, the Employer's inherent right to final selection is preserved and is not subject to arbitral review. A similar provision should be included in the present contract.

Such a provision has never been sought by the County, either before Arbitrator Gallagher in 1983 or before Arbitrator VerPloeg, where the County's final position on Article VII, section 5 was to "[e]liminate this section from the contract." Given this, we agree with the Union that the County has failed to properly preserve its present position that the language illegally intrudes upon an inherent managerial right.[1] *See Law Enforcement Services, Inc. v. City of Roseville,* 393 N.W.2d 670 (Minn.Ct.App. 1986).

**II**

 The County contends that the grievance was not arbitrable and that the remedies used by Arbitrator Bard exceeded his powers. In arbitration cases, the proper role of our review is solely to determine whether specific language in the agreement or submission precludes arbitration on a particular issue. *City of Bloomington v. Local 2828 of American Federation of State, County & Municipal Employees,* 290 N.W.2d 598, 602 (Minn.1980). "[T]he power to fashion a remedy is a necessary part of the arbitrator's jurisdiction unless withdrawn from him by specific contractual language between the parties or by a written submission of issues which precludes the fashioning of a remedy." *Id.* at 603.

The County argues that Arbitrator Bard ignored contract language reserving the County's right to make personnel selection decisions. In particular, it cites Article VI, which is entitled "Employer Authority" and states in pertinent part:

> The EMPLOYER retains the right * * * to select, direct and determine the num-

---

1. Although the district court confirmed both awards after finding that the County had waived the right to challenge the language of section 5 by not appealing Arbitrator Gallagher's original award, we need not address this issue other than to note that when a contract expires its terms are generally subject to renegotiation. In this case, however, the County took the position that Article VII, section 5 should be deleted entirely, a position substantially different from the one it now takes. In this respect, the County may be deemed to have waived the right to now assert that while the procedures employed in a transfer decision are subject to arbitral review, the substantive decision is not because it involves a matter of inherent managerial right.

ber of personnel; to transfer personnel for just cause; * * * and to perform any inherent managerial function not specifically limited by this AGREEMENT.

It also cites Article VII, section 4.H., which is entitled "Shift Bidding" and provides in pertinent part:

Nothing in this section shall be construed to limit the right of the EMPLOYER, as established and limited in Article VII, Section 5, to assign or reassign an employee to a work unit where the EMPLOYER determines such employee is needed or is best suited.

These sections, however, fail to reserve such a right either expressly or impliedly. Had such a right been intended, the parties easily could have included language similar to the contract in *Regents,* as discussed previously. *Id.* at 541.

 Article VII, section 5 does give the County authority to select a more junior applicant if a senior applicant does not have "qualifications substantially equal to those of a junior applicant." In awarding this language in 1983, Arbitrator Gallagher noted:

I find that the Employer's argument that it has special needs that arise from the diversity of its operations in the Sheriff's Department is persuasive. There is good reason to preserve in the management of this complex Department more control over the assignment of personnel to those diverse functions than is ordinarily retained by management of simpler, though perhaps larger, law enforcement units. For that reason, I have used a "relative ability" clause as the standard for selection of personnel to fill vacancies. Ideally, management will make sparing use of the discretion that is left to it by this clause and will honor the Union's preference that seniority be the factor used most to fill vacancies. If it does otherwise, this issue will reappear in future bargaining.

In the present award, Arbitrator Bard noted that "[t]he Employer has had a substantial opportunity to show that there are junior applicants who have superior qualifications for the positions. Having failed to do so, the Arbitrator deems that these rights are now waived." Pursuant to Article VII, section 5, Arbitrator Bard ordered that the most senior deputies be transferred to the permanent vacancies in the Service division.

Although these deputies were not involved in the grievance, the remedy fashioned by Arbitrator Bard is not expressly precluded by the contract. This remedy was also sought by the Union in the following letter requesting grievance:

Therefore, the Union demands:

1) That the Employer immediately fill the permanent positions in Service Division by selecting the senior bidders from the established list.

2) That all resulting transfers be on a voluntary basis.

3) That future vacancies also be filled in accordance with the Contract language.

4) That the resulting divisional vacancies and additional sequential vacancies also be filled in accordance with the Contract language.

5) That the employee be made whole.

We conclude that the remedy fashioned by Arbitrator Bard was not precluded by the parties' written submission of issues.

### DECISION

Because the County has failed to prove that the arbitrators exceeded their powers, we affirm the district court's denial of the motions to vacate and its confirmation of those awards.

Affirmed.