James HILL, Appellant,

v.

CITY OF WINONA, Respondent.

No. C0–89–1970.

Court of Appeals of Minnesota.

May 8, 1990.

Review Denied July 6, 1990.

Kent A. Gernander and Cindy K. Telstad, Streater, Murphy, Gernander & Forsythe, Winona, for appellant.

Richard F. Blahnik and Bruce A. Nelson, Robertson, Blahnik & Jennings, Winona, for respondent.

Carla J. Heyl, St. Paul, for amicus curiae, League of Minnesota Cities.

Considered and decided by KALITOWSKI, P.J., and CRIPPEN and GARDEBRING, JJ.

## OPINION

CRIPPEN, Judge.

Appellant, an officer and twenty-five year veteran of the Winona Police Department, sought to enjoin enforcement of his chief's order that he submit to a current psychological examination. The chief acted on his statement of concerns about appellant's behavior, but the city refused to permit grievance procedures on the chief's action. Although the trial court ordered grievance process after this appeal was commenced, we have before us its earlier decision to require grievance procedures only on the issue of selecting an evaluating clinician. On the appeal from the prior decision, we require modification to provide for grievance process on singling out appellant to undergo the exam.

## FACTS

In April 1988, the Winona police chief asked agents of the Minnesota Bureau of Criminal Apprehension to investigate reports that appellant's kindnesses to three young male offenders had involved overly-close relationships that prompted concern of a social worker and some others. The agents interviewed appellant and his wife, all three boys, mothers of two of the boys, and two people who had done police work with appellant in the past.

On May 16, 1988, the state agents reported having found no evidence that appellant had inappropriately touched the three boys. The two mothers believed appellant had never sexually abused their children. One former officer reported that she had suspected for many years that appellant had sexual contacts with young boys, but she knew of no real incidents of abuse. Another officer remembered rumors over the years about appellant's relationships with boys, and he recalled a report about fifteen years earlier that appellant had kissed one or two boys. Appellant admitted his activities raised red flags suggesting potential sexual abuse, but he said he had not had sexual involvement with any children.

The chief discussed the investigation with appellant on May 19. He concluded only that appellant's favors for the boys and their families had violated several rules on handling information and on use of an official position.

Three weeks later, on June 10, 1988, the chief told appellant he continued to have concerns about appellant's relationship with young boys, and he ordered appellant to undergo a psychological examination. The chief told appellant he would be suspended if he refused to be examined. The chief's policy requires that information gathered in the exam be reported to the employer. Appellant refused the examination.

The trial court issued its first order in appellant's injunction suit in July 1988. As clarified in a September 1989 order, the court issued an injunction, but required grievance procedures only on the question of selecting a psychologist to conduct the ordered examination. This appeal was commenced after the court failed to order grievance procedures concerning the decision that appellant's present fitness was suspect such that he should be ordered to undergo a current psychological exam. Based on appellant's concurrent motion for further clarification of the trial court's order, the court acted again after its jurisdiction on the subject matter was lost; on January 20, 1990, the court ordered the city to act on appellant's grievance of his selection for testing.

## ISSUE

Is grievance process required by law on the public employer's determination of cause to question an individual employee's fitness, and the employer's resulting order for a current psychological examination?

## ANALYSIS

◼ We do not have before us the usual exercise of trial court discretion on multiple factors governing the request for an injunction. Rather, the issue on appeal goes singularly to one of those factors, the trial

court's conclusion on the merits of appellant's claim for rights under public employment labor law. Appellate review under the Public Employee Labor Relations Act, Minn.Stat. §§ 179A.01—179A.30 (1988), is not bound by the trial court's conclusions. *Minneapolis Fed'n of Teachers, Local 59 v. Minneapolis Special School Dist. No. 1,* 258 N.W.2d 802, 804 (Minn.1977).

■ Appellant contends that the trial court's initial error in restricting the scope of a grievance procedure was enlarged by the court's failure to directly decide whether the Winona police department actually had a policy for investigative exams, and the court's failure to identify the details of the policy. Respondent correctly observes, however, that the court's order implies acceptance of the city's claim that the issue was governed by an unwritten policy, and its further claim that the policy was reasonably applied in selecting appellant for an examination. The city does not claim the prerogative to select an individual to be psychologically examined for no reason at all.[1] As argued in the city's brief to this court, the trial court impliedly found the city had a policy for testing and "reason" to order appellant to submit to an exam. The issue at hand is whether the soundness of this reason is to be tested in grievance proceedings or only in judicial attacks typified by the process employed here.[2]

1. Policy impact on working conditions.

Fundamentally, the issue here is shaped by the legislative determination that public employee grievances on "terms and conditions of employment," including "all disciplinary actions," are to be resolved by binding arbitration. Minn.Stat. § 179A.20, subd. 4 (Supp.1989).[3] *See* Minn.Stat. § 179A.03, subd. 19 (1988) ("terms and conditions of employment" includes all personnel policies affecting working conditions of employees); *see also* Minn.Stat. § 179A.06, subd. 5 (1988), and § 179A.07, subd. 2 (1988) (obligation of public employers to negotiate terms and conditions of employments); *University Educ. Ass'n v. Regents of the Univ. of Minnesota,* 353 N.W.2d 534, 538 (Minn.1984) (scope of mandatory bargaining to be broadly construed to promote "resolving labor disputes through negotiation"). We find little room to doubt that appellant's working conditions are materially affected by the mandate that he undergo an investigative psychological examination.

Respondent contends that its policy has no impact on conditions of employment until a disciplinary sanction is imposed. The city similarly argued to the trial court that a grievance procedure on the disciplinary sanction would permit appellant an adequate remedy without prior grievance procedure on the order for an examination. The trial court rejected these contentions, and its rationale has merit. Later disciplinary proceedings based on results of a completed exam may not deal with reasons for compelling the examination. In addition, as the trial court observed, the city has conceded the psychological examination

---

1. The remainder of our analysis of the case is shaped by this characterization of the city's position. In subsequent grievance proceedings, should the city alter its position, claiming a prerogative to order a psychological examination for no reason at all, such a tactic would lend no support to the city's position. Selective demand for psychological examinations, based solely on the will and not the reason of the public employer, would constitute an arbitrary and unlawful imposition of terms and conditions of public employment. Moreover, as the city acknowledges, the trial court's orders constitute a decision that a policy of reason exists; this decision has not been appealed by the city, and the holding cannot now be disregarded.

2. Although it is only a pragmatic consideration, not determinative of the law of the case, the

process here unavoidably attracts attention. This appeal follows intense litigation over a two-year period, involving three trial court orders and a voluminous pattern of pleadings, arguments and submission of memoranda. Litigation in court is a cumbersome alternative to grievance process to examine the merits of the city's decision.

3. Article 23 of the 1987 labor-management contract between respondent and the Winona Police Department Supervisor's Association implements the legislative mandate for grievance procedures on disputes under the agreement. Article 22 governs all efforts to discipline employees, which in each instance must be premised on reasons stated by the employer.

may lead to discharge of appellant; thus, as the court concluded, it is evident that the exam itself could have "profound impact" on appellant's employment. Moreover, the city's contention requires the untenable judgment that an investigative psychological examination is itself only an innocuous experience for public employees, or at least for those occupying law enforcement positions. We cannot overlook the intrusive characteristics of the examination, along with the impact of disclosure of information gathered in the exam. *See Law Enforcement Labor Serv. v. County of Hennepin*, 449 N.W.2d 725, 728–29 (Minn.1990) (policy on personal grooming has impact on working conditions).

As to the prospect to grieve future disciplinary action for refusal to be examined, even if the issues were to encompass cause for the examination order, there is no reason to postpone review of the issue. The city's present order was accompanied by the express promise of suspension if appellant refused to be psychologically examined, and appellant's refusal is inherent in his pursuit of these proceedings. Nothing is gained by briefly suspending review of the issue to permit making record of an express refusal.

2. Parameters of managerial policymaking.

■ The issue of grievability of the dispute over singling out appellant for an examination is rendered more complex because Minnesota's statute requires, in addition to the mandate for negotiation and grievance on conditions of employment, the protection of a public employer's prerogative to determine inherent managerial policy. Minn.Stat. § 179A.07, subd. 1 (1988). *See* Minn.Stat. § 179A.03, subd. 19 (1988) (concept of terms and conditions of employment subject to section 179A.07); Minn. Stat. § 179A.20, subd. 4 (Supp.1989) (no grievance mandate on matters other than terms and conditions of employment); *Law Enforcement Labor Serv.*, 449 N.W.2d at

730 (citing "narrowly defined exceptions" to public labor law premise that mandatory bargaining "provides a reasonable resolution of most labor management disputes"). The exception for inherent managerial policy extends to policy implementation, even when it creates conditions of employment, where implementation is "so interwoven and inseparable" with policymaking that negotiation on implementation issues would risk concessions by management of its protected prerogatives. *Id.* at 729–30; *University Educ. Ass'n*, 353 N.W.2d at 539, 541.

■ It is error, we conclude, to classify as part of policymaking the implementation of respondent's selective, investigative examination policy by applying it to an individual employee.

First, we observe that this individual application contrasts with the more certain policymaking characteristics of some general policies applied to all employees. *See St. Paul Fire Fighters, Local 21 v. City of St. Paul*, 336 N.W.2d 301, 302–03 (Minn. 1983) (observing that training for all members of an employee class is a policy decision); *Minneapolis Fed'n of Teachers, Local 59*, 258 N.W.2d at 805–06 (criteria for transfer of individual teachers separate from managerial decision to transfer a number of employees, and "each individual transfer is a proper subject of grievance arbitration").[4] The *Minneapolis Federation* case is especially persuasive in determining the need for grievance process on the order applying to appellant the city policy to mandate investigative examinations.

Second, issuance of an examination order to appellant is collateral to the basic policy initiative to investigate lapses in fitness; grievance procedures on the action do not impinge on formulation of the policy. The city desires to act, it says, where there is reason to question fitness for employment due to an officer's behavior or current physical condition. Thus, the elements of a reasonable fitness concern include incidents of misconduct or deterioration of perform-

---

**4.** Pre-licensing psychological examinations are required of all prospective Minnesota police of-

ficers. Minn.R. 6700.0700, subpt. 1. H. (1989).

ance. These matters can be objectively evaluated without hampering the city's policy initiative. *See St. Paul Fire Fighters*, 336 N.W.2d at 302–03 (negotiation appropriate on various aspects of implementing city's policy to involve all fire captains in a training program). This is in contrast to more subjective dealings with staff, such as a full evaluation of attributes for academic tenure, where each decision is itself a policy initiative aimed generally at achieving a better program of the employing institution. *See University Educ. Ass'n*, 353 N.W.2d at 541; *see also Law Enforcement Labor Serv.*, 449 N.W.2d at 729–30 (specific grooming standards are integral to the general policy initiative for well-groomed police officers).

Finally, we are mindful, as already observed, that the investigative psychological examination together with disclosure of information obtained in the exam, is unusually intrusive. It is also important, we conclude, that the individual application here is a part of disciplinary steps aimed at appellant, both as a stated consequence of declining to be examined and as the prospective result of discoveries made in the investigative exam. *See International Bhd. of Teamsters v. City of Minneapolis*, 302 Minn. 410, 415–16, 225 N.W.2d 254, 257–58 (1975) (suspension steps a sure part of conditions of employment). The existing labor management agreement between the parties calls for grievance process on the employee's challenge to disciplinary actions.[5]

For these several reasons, we conclude that the city's order to appellant was outside the parameters of managerial policymaking.

## DECISION

The trial court's injunction must compel grievance procedures on the reason for questioning appellant's fitness and selecting him for a mandatory psychological examination, not alone on identification of the clinician who might administer the exam. The trial court's order will be modified accordingly.

Affirmed as modified.

5. *See supra* note 3.

GARDEBRING, J., concurs specially, with opinion.

KALITOWSKI, J., dissents, with opinion.

GARDEBRING, Judge (concurring specially).

I concur in the majority opinion, but would emphasize the need for grievance procedures because of two unusual circumstances in this case. First, prior to the commencement of this litigation there was apparently no written policy relative to additional psychological or physical examinations based on a concern for the officer's fitness for duty. There are no Minnesota PELRA cases which deal with the issue of the way in which a matter of "inherent managerial policy" must be articulated prior to its application to a specific individual. While I would not go so far as to require that such a policy be formally promulgated, certainly fundamental fairness requires that, where the policy exists only in inchoate, unwritten form, its application to an individual should be subject to review through the grievance procedure.

Second, the nature of the testing in this instance also suggests the need for a third party review by way of the arbitration or grievance process. If the requested testing involved investigation of an officer's pistol accuracy by means of testing at a pistol range, perhaps a grievance procedure would not be as appropriate; but here, because of the highly intrusive nature of psychiatric testing, the protection of the grievance process seems necessary.

Further, I believe the dissent wholly misses the mark by relying on a previous PELRA case which analyzes management's duty to negotiate the terms and conditions of employment. *See Law Enforcement Labor Services v. County of Hennepin*, 449 N.W.2d 725 (Minn.1989). Neither *County of Hennepin* nor other recent PELRA cases, *St. Paul Fire Fighters, Local 21 v. City of St. Paul*, 336 N.W.2d 301 (Minn.1983), and *University Education Association v. Regents of University of*

*Minnesota,* 353 N.W.2d 534 (Minn.1984), provide guidance in this situation. Respondent in this matter is not seeking additional bargaining or negotiation of the contract; rather, he is merely attempting to exercise the right to grieve, already guaranteed to him by a previously negotiated provision of the contract between the City of Winona and his union.

It may indeed be the case, as the dissent argues, that negotiation over a method to implement a policy of psychiatric testing is an inappropriate interference with managerial authority, but that is not the issue before us today. We are only asked to decide whether respondent may grieve an order, which, if disobeyed, will result in disciplinary action. The contract plainly so provides, and therefore the trial court must be affirmed, with the modification noted in the majority opinion.

KALITOWSKI, Judge (dissenting).

I respectfully dissent. I would affirm the trial court without modification. The decision by the chief of police requiring appellant to undergo psychological testing to determine his fitness to serve as a police officer is not subject to grievance procedures. There is no specific provision in the applicable labor contract which allows a police officer to grieve such a decision. In addition, testing for fitness is clearly not a disciplinary action subject to grievance as defined under the contract.

Although appellant has no specific right to grieve the chief's decision under the contract, he argues that the testing affects the terms or conditions of employment and is therefore subject to both negotiation and grievance. However, the trial court correctly held that the *establishment* of a policy concerning psychological testing is within the employer's prerogative to determine inherent managerial policy and is therefore outside the statutory mandate for negotiation under PELRA. Likewise,

the decision by the chief to *implement* the policy by requiring appellant to undergo psychological testing is not subject to bargaining because it is interwoven with and inseparable from the policy itself. Implementation of the policy relates directly to the police chief's obligation to maintain the basic fitness of the police force. Bargaining on policy implementation could impinge on the chief's protected prerogatives and frustrate the efforts of the police to protect the safety and welfare of citizens. *See Law Enforcement Labor Services, Inc. v. County of Hennepin,* 449 N.W.2d 725, 730 (Minn.1990).

Because the decision to require testing for fitness is not a subject for which a grievance is allowed under the contract, is not a disciplinary action under the contract, and is not subject to bargaining as a term or condition of employment, appellant has no right to grievance procedures.

Finally, I appreciate and share the trial court's concern about the intrusive nature of psychological testing and its possible impact on appellant's employment. However, concern for public safety has led to a requirement that all applicants for law enforcement positions in Minnesota undergo psychological testing to determine that they are free from "any emotional or mental condition which might adversely affect the performance of peace officer duties." *See* Minn.R. 6700-0700 subpt. 1 H (1989). Although the rule does not specifically provide for re-testing, the policy behind the testing requirement supports the conclusion that it is within the managerial authority of the chief to require additional tests where necessary.