**LAW ENFORCEMENT LABOR SERVICES, INC., Respondent,**

v.

**CITY OF LUVERNE, Appellant.**

**No. CX–90–1352.**

Court of Appeals of Minnesota.

Dec. 4, 1990.

Review Denied Feb. 20, 1991.

Marylee Abrams, Bloomington, for respondent.

Donald R. Klosterbuer, Luverne City Atty., Luverne, for appellant.

Considered and decided by RANDALL, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

HUSPENI, Judge.

The City of Luverne appeals from an injunction which prohibits implementation of a quadrennial physical examination policy and requires the City to meet and negotiate the implementation of the policy with respondent Law Enforcement Labor Services, Inc. Appellant denies any obligation to meet and negotiate claiming that the policy constitutes an inherent managerial right. We affirm.

## FACTS

Appellant City of Luverne (City) is a Minnesota municipal corporation located in Rock County, Minnesota. Respondent Law Enforcement Labor Services, Inc. (LELS) is the certified exclusive bargaining representative for the four police officers employed by the City.

In January 1987, the Luverne city council (the council) adopted a policy requiring all full-time employees to undergo a physical examination once every four years. The council directed the city administrator to implement the policy.

The City left all details of implementation, including the scope of the examination and the contents of the releases and medical reports, to the discretion of the city administrator. The council reserved the right to discipline the police officers for noncompliance and provided that the policy was subject to change at the discretion of the City.

Pursuant to the council's directives, the city administrator sent a memorandum directed to "AFSCME MEMBERS AND OTHER FULL–TIME EMPLOYEES" that notified the employees of the policy and provided a schedule outlining the times when the employees were expected to undergo the physical examination. The examination schedule included the names of the four LELS members and stated that all four were scheduled to be examined in 1988. LELS did not object to the policy at the time the memorandum circulated.

Over the years, LELS and the City have negotiated a number of collective bargaining agreements. The parties did not raise the policy as an issue when negotiating the 1988–89 agreement in the fall of 1987.

Before the promulgation of the policy at issue in this case, the City negotiated the implementation of a physical examination policy with the American Federation of

State, County and Municipal Employees (AFSCME) applicable to nonessential, nonadministrative and confidential city employees. The collective bargaining agreement did not provide for mandatory binding arbitration.

On June 30, 1988, one of the LELS members questioned the applicability of the policy to the police officers. In response to the inquiry, the city administrator wrote the officer a letter explaining the City's position. In December 1988, LELS and its members sent two letters to the City protesting the policy and reserving their rights to pursue civil remedies under the labor agreement and applicable state law. The union took the position that the policy and its implementation were terms and conditions of employment subject to mandatory bargaining. After registering their objections and reserving their rights, three of the four [1] officers took the physical in December 1988.

In October 1989, LELS informed the City of its intention to include implementation of the physical examination policy in negotiation of the 1990–91 collective bargaining agreement. The City refused to meet and negotiate this policy in the successor agreement, arguing that it was a matter of inherent managerial right. The 1988–89 agreement expired on December 31, 1989.

LELS brought action seeking a temporary and permanent injunction prohibiting the City from implementing the physical exam policy and requiring the City to meet and negotiate implementation of the policy.

The trial court granted the injunction, finding that although the formulation of the policy was a managerial right, and some aspects were non-negotiable, certain other aspects of the policy affected terms and conditions of employment and, therefore, were subject to negotiation. Further, the trial court found that the implementation of the policy was not so intrinsically interwoven with the adoption of the policy as to rend _ the implementation non-negotiable.

## ISSUE

Did the trial court err by finding an unfair labor practice, enjoining implementation of the physical examination policy, and ordering negotiation?

1. Does the physical examination policy affect terms and conditions of employment?

2. Is the implementation of the policy "intrinsically interwoven" with the policy itself?

3. Did LELS waive its right to negotiate the physical examination policy?

## ANALYSIS

When reviewing decisions made under the Public Employees Labor Relations Act (PELRA), Minn.Stat. §§ 179A.01–.30 (1988), this court is not bound by the trial court's conclusions of law. *Hill v. City of Winona*, 454 N.W.2d 659, 661 (Minn.App. 1990), *pet. for rev. denied* (Minn. July 6, 1990).

A public employer commits an unfair labor practice by "refusing to meet and negotiate * * * with the exclusive representative of its employees," Minn.Stat. § 179A.13, subd. 2(5), regarding "terms and conditions of employment." Minn.Stat. § 179A.07, subd. 2. PELRA defines "terms and conditions of employment" as

the hours of employment, the compensation therefor including fringe benefits * * * and the employer's personnel policies affecting the working conditions of the employees.

Minn.Stat. § 179A.03, subd. 19. A public employer has no obligation to meet and negotiate "matters of inherent managerial policy." Minn.Stat. § 179A.07, subd. 1.

At the outset, respondent does not challenge the determination of the trial court that the formulation of the physical examination policy is a matter of inherent managerial right. The parties disagree, however, on whether implementation of the policy is negotiable. Often, "areas of 'inherent managerial policy' and 'terms and conditions of employment' * * * overlap."

1. One of the officers had recently been examined.

*St. Paul Fire Fighters, Local 21 v. City of St. Paul*, 336 N.W.2d 301, 302 (Minn.1983).

Minnesota courts apply a two-step analysis in deciding whether negotiation is required:

> (1) does the public employer's management decision have an impact on "terms and condition of employment" and if so, (2) is the establishment of the policy distinct and separable from its implementation.

*Law Enforcement Labor Services, Inc. v. Hennepin County*, 449 N.W.2d 725, 728 (Minn.1990) (citing *Univ. Educ. Ass'n v. Regents*, 353 N.W.2d 534, 539 (Minn.1984)). In cases where a policy decision

> is so intrinsically interwoven with its implementation that to require the public employer to negotiate its implementation would also force it to negotiate the underlying policy decision, no negotiation is required.

*Id.* at 727.

■ First, appellant argues that the implementation of the policy does not affect terms and conditions of employment. We cannot agree. Not unlike the departmental grooming policy in *Law Enforcement*, 449 N.W.2d at 729, or the psychological examination requirement in *Hill*, 454 N.W.2d at 661, a mandatory quadrennial physical examination policy materially "affect[s] the working conditions of the employees." Minn.Stat. § 179A.03, subd. 19. Job security, wages and fringe benefits all may be affected by the results of the examination. An adverse result could lead to significant duty changes and ultimately could result in termination of employment. This policy clearly affects "terms and conditions of employment."

■ Next, appellant contends that all aspects of the policy and its implementation were "intrinsically interwoven" and that to negotiate the implementation would be to negotiate the policy itself. Again, we disagree. The distinctions drawn by the trial court between negotiable and non-negotiable aspects of the policy are valid and are consistent with *St. Paul Fire Fighters*, in which the supreme court ruled:

> [t]o require the City to negotiate either the form and content of the [officer's training] program or criteria for exempting some [employees] would be to require negotiation of the basic policy decision, which we hold is a nonnegotiable matter of inherent managerial policy * * * [but that] certain aspects of the implementation * * * [and] the manner in which the participation requirement is to be fulfilled,

are severable and, therefore, negotiable. *St. Paul Fire Fighters*, 336 N.W.2d at 303.

Similarly, the supreme court ruled in *Int'l Union of Operating Eng'rs Local No. 49 v. City of Minneapolis*, 305 Minn. 364, 233 N.W.2d 748 (1975), that although the decision to give competitive examinations was a matter of inherent managerial policy, the form of the examination was negotiable. *Id.* at 373, 233 N.W.2d at 754.

Conversely, in *Law Enforcement*, 449 N.W.2d at 730, the supreme court found that the implementation of a departmental grooming policy at the Hennepin County Sheriff's Department was intertwined with the policy itself and, therefore, was not negotiable. We believe *Law Enforcement* is distinguishable from the situation here. The implementation of the grooming policy[2] in *Law Enforcement* was highly subjective. A decision whether nail color is "gaudy, pretentious, or unusual" is subject to individual taste or opinion. Negotiating the subjective implementation of the grooming policy in *Law Enforcement* would be tantamount to negotiating the basic policy itself. Implementation of the examination policy in this case is similar to that in *St. Paul Fire Fighters* and *Int'l Union of Operating Engr's*, and is more objective than in *Law Enforcement*. Negotiation of such issues as whether second opinions are authorized and who should bear their cost does not undermine the

---

2. The policy prohibited fingernails extending more than one-eighth inch from the tip of the finger and provided "[n]o nail color may be worn if the appearance that results is so *gaudy,* *pretentious or unusual as to attract undue attention."* *Law Enforcement,* 449 N.W.2d at 726 (emphasis added).

basic policy of requiring a physical examination once every four years. Accordingly, we agree with the trial court that certain aspects of the implementation of the policy are severable and therefore negotiable.[3] We also note that the fact that the City has successfully negotiated the implementation of a physical examination policy with AFSCME somewhat weakens the City's argument that to negotiate the implementation of the policy would require negotiating the policy itself.[4]

■ Finally, appellant argues that by failing to object to the physical examination policy in the negotiation of the 1988–89 collective bargaining agreement in late 1987, LELS waived the right to subsequently raise that issue. We disagree.

■ In order to waive a statutory right to negotiate on a mandatory subject of bargaining, a union must express its intention to waive in "clear and unmistakable language." *Gen. Drivers Union Local 346 v. Indep. School Dist. No. 704*, 283 N.W.2d 524, 527 (Minn.1979). Moreover, the employer must give the employee "notice that a decision has been made, or that one is imminent, before that decision is implemented." *Id.* at 528.

> [A] union's failure to demand bargaining regarding a change in a term or condition of employment will not constitute waiver of the right to negotiate unless the record shows that the employer gave both adequate and timely notice of its intended action.

*Foley Educ. Ass'n v. Ind. School Dist. No. 51*, 353 N.W.2d 917, 922 (Minn.1984).

The record shows that on January 28, 1987, the city administrator circulated a memorandum directed to "AFSCME MEMBERS AND OTHER FULL-TIME EMPLOYEES" outlining the policy and providing an examination schedule for each police officer. Each of the officers conceded that they were full-time employees and had received the memorandum. The officers, however, contend that the memorandum was not clear because it mentioned AFSCME but did not specifically mention LELS. We conclude that this fact, coupled with the fact that an established policy with AFSCME was already in place, reasonably led LELS members to believe that the policy did not apply to them. Moreover, the apparent confusion is evidenced by the officer's correspondence with the City in June 1988 requesting clarification of the applicability of the policy to LELS members.

We find no expression by LELS in "clear and unmistakable language" of its intention to waive its objection to the mandatory physical examination policy. On the facts of this case, LELS' failure to raise the issue in late 1987 is not sufficient to constitute waiver.

Moreover, we find the facts of *Foley*, wherein the supreme court found waiver, to be distinguishable. There, the employees received at least three separate notices of the policy change several months before negotiations of the successor agreement were set to begin.[5] *Id.*, 353 N.W.2d at 922. In this case, the City announced the examination policy in January 1987 by distributing a single memorandum. The LELS members could not experience the practical implementation of the policy until 1988, when each member was scheduled to be examined; this was substantially after the parties' fall 1987 negotiation of the agreement under which the City would have us find waiver.

## DECISION

Appellant committed an unfair labor practice by refusing to meet and negotiate

---

3. We decline to hold the parties to the specific areas identified by the trial judge as either negotiable or non-negotiable. Rather, the parties must be free to explore a variety of avenues in negotiating the implementation of the policy.

4. We recognize, of course, that the AFSCME collective bargaining agreement does not provide for binding arbitration upon failure to negotiate successfully, while the LELS agreement requires binding arbitration.

5. The notices included (1) findings of fact issued by a hearing officer, (2) a notice of change sent to employees, and (3) actual notice to employees attending a board meeting where the policy change was discussed.

the implementation of the physical examination policy. The trial court properly enjoined implementation of the policy and ordered negotiation. LELS did not waive its right to bargain on the issue.

Affirmed.

RANDALL, Judge (dissenting).

I agree with the majority where it concludes formulation of a physical examination policy is a matter of inherent managerial policy and not subject to mandatory bargaining. I disagree with the conclusion that the implementation is so distinct that it is severable and thus has to be negotiated independently when the decision to institute mandatory physical examination does not.

Here, the policy decision to establish physical examinations for police officers is non-negotiable. That policy promotes one of the essential reasons that cities have taxing power and exist at all, namely, the protection and the health and welfare of its citizens. This policy serves that purpose by helping to ensure the ability of officers to perform their duties. I believe separating implementation from the policy decision is a round about way of defeating the conceded power of the City to manage its police force. *See Law Enforcement Labor Services, Inc. v. Hennepin County*, 449 N.W.2d 725, 729–30 (Minn.1990).